UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JACQUELINE GARCÍA-NAVARRO,    )
                             )
              Plaintiff,     )
                             )
        v.                   )        3:17-cv-01271-JAW
                             )
HOGAR LA BELLA UNIÓN, INC.,  )
        et al.               )
                             )
              Defendants.    )

**ORDER ON PENDING MOTIONS**

In this wrongful death action arising under Puerto Rico law, the Plaintiff seeks to recover damages against the tortfeasor's insurer. The tortfeasor entered into a settlement agreement with the defendant in late-October 2019. In that agreement, the tortfeasor (1) accepted all liability alleged in the Plaintiff's complaint, (2) waived apportionment of liability, and (3) assigned its crossclaims for bad faith against its insurer to the Plaintiff. The tortfeasor's insurer was not a party to this agreement. A trial between the Plaintiff and insurer followed on the issue of damages. The insurer did not participate. The jury found $950,000.00 in damages.

The Plaintiff also brought direct claims against the insurer in tort, and under Puerto Rico Law 247, which permits parties to bring bad faith claims directly against insurers. The Plaintiff and the insurer continue to litigate these claims, along with the crossclaims assigned to the Plaintiff in the settlement agreement. After trial, the Court asked the parties to submit memoranda of law about how the future litigation should be structured. Key issues include the number of trials, the parties' jury trial

rights, whether the settlement agreement is valid, and if so, its effect on the remaining claims. This Order decides those questions of law.

## I.   PROCEDURAL HISTORY

On October 22, 2019, two of the parties in this dispute—Jacqueline García-Navarro and Universal Insurance Company (Universal)—filed a number of motions related to the upcoming jury trial. On October 25, 2019, the Court stayed most of these motions. *Am. Order* (ECF No. 327). On October 28, 2019, the Court bifurcated the tort claim from the Law 247 claim and stayed all filings related to the six motions concerning the Law 247 claim. *See Order on Bifurcation* at 7 (ECF No. 330).

After the stay order, on October 28, 2019, Ms. García-Navarro filed an informative motion, explaining that she and Hogar La Bella Unión, Inc. executed a settlement agreement on the liability portion of the tort claims in the pending lawsuit and asking the Court to try the tort and Law 247 claims together. *Informative Mot. Regarding Settlement and Urgent Req. for Order* (ECF No. 331). On the same day, the Court issued an order on the informative motion, denying Ms. García-Navarro's renewed request. *Order re: Informative Mot. Regarding Settlement and Urgent Req. for Order* (ECF No. 332). On October 29, 2019, Universal filed a motion requesting dismissal of the direct cause of action against it on the grounds that the settlement agreement was collusive or reconsideration of the Court's responsive order. *Mot. Requesting Dismissal of Direct Cause of Action Against Universal Insurance on Ground of Collusion Between Claimant and Insured or, in Alternative, Req. for*

2

*Recons. of Order at Docket No. 332* (ECF No. 349). Neither Ms. García-Navarro nor Hogar La Bella Unión, Inc. responded.

The Court proceeded to trial solely on the damages element of the tort claim and the jury issued a verdict on November 5, 2019, awarding Ms. García-Navarro $950,000.00 in damages. *Jury Verdict Form* (ECF No. 367). Two days later, on November 7, 2019, the Court held a status conference with counsel for all three parties. *Min. Entry* (ECF No. 371). The Court discussed a number of outstanding issues that must be resolved before the second phase of trial:

> (1)   the coverage action, including the impact of the settlement agreement, whether it should be a jury trial, and whether Universal can raise its collusion argument;
>
> (2)   the Law 247 claim, including whether it is ready for trial or not, whether Ms. García-Navarro is entitled to a jury trial on this claim, and whether Universal can raise its collusion argument on this claim;
>
> (3)   Puerto Rico law's handling of apportionment, both generally and in this situation, and whether this is a jury issue;
>
> (4)   the next steps, including how many trials there should be on the remaining issues and whether the Court should unite the coverage and apportionment issues; and
>
> (5)   Universal's collusion claim, including whether the settlement is void in part or in whole.

The Court asked Ms. García-Navarro and Universal to set a briefing schedule and file legal memoranda.  Hogar La Bella Unión, Inc. reserved the right to reply. On December 31, 2019, Ms. García-Navarro filed her legal memorandum.  *Mem. of Law* (ECF No. 382) (*Pl.'s Mem.*).  Universal filed its legal memorandum on February 12, 2020.  *Universal Insurance's Mem. of Law* (ECF No. 390) (*Universal Opp'n*).  Ms. García-Navarro filed a reply to Universal's response on February 28, 2020.  *Reply to Mem. of L. Filed at Docket No. 390* (ECF No. 398) (*Pl.'s Reply*).  Hogar La Bella Unión, Inc. did not file a reply.

On July 7, 2020, to bring the docket in this case up to date, the Court dismissed without prejudice five stayed motions (ECF Nos. 313, 314, 317, 318, and 320) and Universal's motion for dismissal of the cause of action (ECF No. 349) as the substance of those motions may be subsumed by the parties' memoranda of law and the issues may be decided in this Order.

## II.    THE PARTIES' POSITIONS

### A.    The Settlement Agreement

#### 1.    Jacqueline García-Navarro's Memorandum

In her memorandum, Ms. García-Navarro first asserts that the Settlement Agreement she executed with Hogar Bella Unión is valid.  *Pl.'s Mem* at 2.  Citing *Safeco Insurance Co. of America v. Parks*, 170 Cal. App. 4th Supp. 1013-14 (2d Dist. 2009), she claims "[i]t is an unremarkable, well-settled principle that when an insurer dishonors its duty to defend, the insured 'is free to make the best settlement possible with the third-party claimant, including a stipulated judgment with a covenant not

4

to execute'". *Id.*  Ms. García-Navarro explains that Puerto Rico is one of several jurisdictions that permit direct suits for damages against an alleged tortfeasor's insurer. *Id.* at 3-4 (citing P.R. LAWS ANN., tit. 26, § 2003 (L.P.R.A.)).  She cites *Ruiz-Rodríguez v. Litton Industries Leasing Corp.*, 574 F.2d 44 (1st Cir. 1978), stating "the direct-action statute 'merely permits an injured party to maintain directly against the insurer the same claim it would have pursued against the insured.'" *Id.* at 5 (quoting *Ruiz-Rodríguez*, 574 F.2d at 45-46).

Ms. García-Navarro then discusses an insurer's duty to defend its insured, writing "[t]he duty to defend is king among the obligations of the insurer." *Id.* at 5 (citing *Pagán Caraballo v. Silva*, 122 D.P.R. 105, 111-12, 22 P.R. Offic. Trans. 96 (1988)).  Without providing case support she continues that the "obligation and consequences of [abridging the duty to defend] are unaltered by the Puerto Rico direct-action statute." *Id.*  In a footnote, she quotes Hogar La Bella Unión's insurance policy with Universal and she maintains that the policy establishes Universal's duty to defend. *See id.* at 5, n.4 (citing *Pl.'s Mem*, Attach. 1, at 19 (ECF No. 382) (*Ins. Policy*) ("Universal's Insurance policy spells out in unequivocal terms the obligation to defend Hogar Bella Unión: 'We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance apply.  We will have the right and duty to defend the insured against any suit seeking those damages'").  Ms. García-Navarro also notes that when an insurer breaches its duty to defend, the insurer may be liable for "coverage payment of attorney's fees and costs plus, in certain circumstances, coverage of a

5

judgment that exceeds the policy limits." *Id.* at 5 (citing cases). However, she states that Puerto Rico caselaw does not establish what remedy is appropriate when an insured settles a claim after its insurer breaches the duty to defend. *Id.* at 5-6.

Looking outside Puerto Rico, Ms. García-Navarro surveys caselaw from across the United States, observing that jurisdictions "are divided on whether the insurer is automatically bound to cover the settlement amount." *Id.* at 6. She indicates that some jurisdictions remedy breach of the duty to defend by estopping the insurer from contesting coverage and obligating the insurer to "pay any reasonable settlement amount agreed upon by the insured without collusion or fraud." *See id.* at 6-7 (citing *Marks v. Houston Cas Co.*, 881 N.W.2d 309, 332 (Wis. 2016); *Flannery v. Allstate Ins. Co.*¸ 49 F. Supp. 2d 1223, 1227-28 (D. Colo. 1999); *Black v. Goodwin, Loomis & Britton, Inc.*, 681 A.2d 293, 302 (Conn. 1996); *Ames v. Cont'l Cas. Co.*, 340 S.E.2d 479, 485 (N.C. Ct. App. 1986)).

According to Ms. García-Navarro, "other jurisdictions are more lenient to the insurer and allow coverage to be contested." *Id.* at 7 (citing *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1260-61 (D. Nev. 2015)). However, she claims that "[w]here this rule is the norm, the insurer can contest coverage based on policy exclusions; yet, it is invariably bound by the stipulations and admissions contained in a settlement or in a stipulated judgment." *Id.* (citing *Enserch Corp. v. Shand Marahan & Co.*, 952 F.2d 1485, 1493-95 (5th Cir. 1992); *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d at 1261-64; *Exterovich v. City of Kellogg*, 80 P.3d 1040, 1042-43 (Idaho 2003)). The Plaintiff cites several cases to support her argument that when an insurer breaches

its duty to defend and the insured settles with a stipulation of liability, the insurer may litigate whether it is liable under the insurance contract but not whether the alleged tortfeasor was truly liable as a matter of tort law. *See id.* at 7-8 (citing *Ariz. Prop. & Cas. Ins. Guar. Fund v. Martin*¸ 113 P.3d 701, 704 (Ariz. Ct. App. 2005); *Assoc.'d Aviation Underwriters v. Wood*, 98 P.3d 572 (Ariz. Ct. App. 2004); *McCraney v. Fire & Casualty Ins. Co.*, 357 S.E.2d 327, 328 (Ga. Ct. App. 1987)).

After explaining the relevant legal standard, Ms. García-Navarro applies that standard to the facts of the case. *Id.* at 9-13. First, she addresses the affect of the Settlement Agreement and jury verdict between herself and Hogar La Bella Unión, stating "that action is now over and the Honorable Court may enter judgment against Hogar Bella Unión as soon as it deems fit." *Id.* at 9. She continues by asserting that her cause of action against Hogar Bella Unión and her direct action against Universal are distinct. *Id.* at 10. Ms. García-Navarro further avers that "the settlement and jury award solved with finality all issues about negligence, causation, and damages pending between Hogar Bella Unión and [herself]." *Id.* (citing *Mot. Req. Dismissal of Direct Cause of Action Against Universal Ins. on Ground of Collusion Between Claimant and Insured or, in the Alternative, Req. for Recons. of Order at Docket No. 332*, Attach. 1 at 2, 4, 5 (ECF No. 349) (*Settlement Agreement*)).

Next, Ms. García-Navarro articulates her view of how this litigation should be structured going forward. *Id.* 10-13. She reiterates that the courts of the commonwealth of Puerto Rico have not established the proper remedy when an insurer breaches its duty to defend, the insured settles, and the direct action against

the insurer continues.  *Id.* at 10.  However, she contends that Universal may not litigate Hogar La Bella Unión's negligence, causation, and damages, regardless of which approach the Court applies.  *Id.* at 11.  Thus, Ms. García-Navarro concludes that if the Court permits Universal to litigate its own liability, such challenges "should exclusively revolve around policy exclusions, taking as a given all facts admitted by Hogar Bella Unión pursuant to the settlement agreement as well as those Universal Insurance could have litigated had it not breached its duty to defend." *Id.* at 12-13.

## 2.    Universal Insurance Company's Opposition

Universal states that the "validity of the Settlement Agreement is a threshold issue that must be resolved before determining the next step in the present litigation." *Universal Opp'n* at 6-7.  Universal believes the Settlement Agreement is invalid for two reasons.  *Id.* at 7.  First, Universal contends "the agreement is not a valid contract under Puerto Rico law because it[]s consideration is illicit for being contrary to the Puerto Rico Insurance Code, pubic policy, and general principles of insurance law." *Id.*  Second, Universal maintains that "the agreement is invalid because it was carried out in a collusive attempt to artificially increase Universal's exposure in the case by expanding its coverage under [its policy for Hogar La Bella Unión.]" *Id.*

Regarding illicit consideration, Universal first avers that it has standing to challenge the Settlement Agreement's validity even though it is not a contracting party.  *Id.*  Universal contends that when one or more contracting parties intend their

8

contract to injure a non-contracting third-party, that third-party may bring an action to nullify the contract. *Id.* at 7-8 (citing *Dennis, Metro Invs. v. City Fed. Savs. & Loan Ass'n*, 121 P.R. 197 (1988); *Gen. Office Prods. Corp v. A.M. Capen's Sons*, 115 P.R. Offic. Trans. 553 (1984); Luis Díez-Picaso, Fundamentos del Derecho Civil Patrimonial 281 (1st ed. 1979)). Universal claims these requirements are satisfied because it is not a party to the Settlement Agreement, the agreement purportedly forces Universal to exceed its coverage obligations, and the contracting parties intended this result. *Id.* at 8. Thus, Universal concludes that it has standing to challenge the Settlement Agreement. *Id.*

Having dispensed with standing, Universal asserts that the Settlement Agreement is invalid under Puerto Rican contract law. *Id.* Universal states that "[i]t is black letter law that a contract with no consideration or cause, or an illicit one, has no effect whatsoever." *Id.* at 8-9 (citing *P.R. Power Auth. v. Actions Refund*, 472 F. Supp. 2d 133 (D.P.R. 2006)). Universal claims that consideration is illicit "if it is contrary to law or good morals." *Id.* at 9 (citing 31 L.P.R.A. § 3432[1]). Additionally, Universal quotes caselaw for the proposition that in "all cases in which both contracting parties arrange to cause harm to a third person, **the contract has an illegal consideration** and such condition thus implies its nullity." *Id.* (quoting *Dennis, Metro Invs.*, 121 P.R. 197) (emphasis in Universal's mem.).

---

[1]      Universal twice miscites the applicable statute as § 3232. *Def.'s Opp'n* at 8-9. The correct citation is 31 L.P.R.A. § 3432:

        Contracts without consideration or with an illicit one have no effect whatsoever. A consideration is illicit when it is contrary to law and good morals.

Next, Universal applies its legal conclusions to the facts of the case. *Id.* Universal turns to the Plaintiff's argument that because Universal breached its duty to defend Hogar La Bella Unión, Hogar was free to obtain "the best settlement possible with the third-party claimant, including stipulated judgment with a covenant not to execute." *Id.* at 10 (quoting *Pl.'s Mem.* at 2). Universal responds that, to date, there has been no finding that it breached its duty to defend. *Id.* However, even if there were, it reasons that the Settlement Agreement must be valid under Puerto Rico law to be enforceable. *Id.*

Universal contends that the Settlement Agreement is unenforceable. *Id.* It notes that the "Agreement's so-called waiver of liability apportionment forces Universal to indemnify Plaintiff for the liability of released codefendants, who are not insured under Hogar La Bella Union and whose liability is not covered under Hogar Bella Unión's policy." *Id.* Universal continues, stating that under the Puerto Rico Insurance Code "The liability of the insurer **shall not exceed** that provided for in the policy, and that the court shall determine not only the liability of the insurer, but also the amount of the loss." *Id.* (quoting 28 L.P.R.A. § 2003) (emphasis in Universal memorandum). Universal contends that under the approach adopted by the majority of courts, "even when an insurer breaches its duty to defend, the insurer is only bound by the agreement if the claimant proves . . . the underlying claim against the insured was within coverage of the policy." *Id.* at 11. Therefore, it posits that in such an action "the insured has the right to present its policy defenses." *Id.* (citing cases, including *Salvati v. Am. Ins. Co.*, 855 F.3d 40 (1st Cir. 2017)).

According to Universal, "[t]he reasoning behind this doctrine is premised on the distinction between an insurer's duty to defend and its duty to indemnify." *Id.* Universal cites the Puerto Rico Insurance Code for the premise that insurer liability is limited to covered losses under the policy, rather than the mere existence of judgment against the insured or payments made by the insured. *Id.* (citing 26 L.P.R.A. § 2010). As a result, Universal asserts that the Settlement Agreement does not automatically trigger its duty to pay, rather "an insurer's duty to indemnify is only activated by the facts as proven in a court of law . . .." *Id.* at 12. Therefore, Universal concludes that it may litigate whether the Settlement Agreement was a covered loss under Hogar La Bella Unión's policy. *Id.*

Finally, Universal argues that the Settlement Agreement is void as a matter of public policy. *Id.* Specifically, Universal alleges that the Settlement Agreement allows double recovery for Ms. García-Navarro's damages and therefore constitutes unjust enrichment. *Id.* (citing *Gomez v. Rodríguez-Wilson*, 819 F.3d 18 (1st Cir. 2016); *Portugues-Santana v. Rekomdiv Int'l, Inc.*, 725 F.3d 17 (1st Cir. 2013); *Villarini-García v. Hospital del Maestro*, 112 F.3d 5 (1st Cir. 1997); *Szendrey v. Hospicare*, 158 P.R. 648 (P.R. 2003)).

### 3.   Jacqueline García-Navarro's Reply

Ms. García-Navarro's Reply first answers Universal's contention that it has never been adjudged to have breached its duty to defend Hogar La Bella Unión. *Pl.'s Reply* at 2-3. She states that Universal has, in fact and in law, breached its duty. *Id.*

11

However, she does not address whether the settlement is void due to illicit consideration or public policy grounds. *Id.* at 7-8.

### B. The Law 247 Claim

#### 1. Jacqueline García-Navarro's Memorandum

On the P.R. Law 247 claim, Ms. García-Navarro asserts that she has a Seventh Amendment right to a jury trial regarding her claims for compensatory and punitive damages but not likely for her claims for costs or her attorney's fees. *Pl.'s Mem.* at 25. She states that the Seventh Amendment "controls when a federal court is enlisted to adjudicate a claim brought pursuant to a state's substantive law." *Id.* at 20 (quoting *Gallagher v. Wilton Enters., Inc.*, 962 F.2d 120, 122 (1st Cir. 1992)).

Ms. García-Navarro argues that the relevant Seventh Amendment test is a two-prong analysis which first considers whether the statutory cause of action is analogous to either a common law cause of action or an action cognizable in the 18th century English courts. *Id.* If there is an analogous common law cause of action, she claims that *Gallagher* requires a court to "determine whether those analogous common law causes of action were legal or equitable in nature." *Id.* at 21. Typically, actions concerning contract or torts "were traditionally considered causes of action legal in nature." *Id.* (citing *Gallagher*, 962 F.2d at 122-23). She states that under *Gallagher* both punitive and compensatory damages are "invariably considered legal in nature, rather than equitable . . .." *Id.* (citing *Gallagher*, 962 F.2d at 122-23).

Applying the law to the facts. Ms. García-Navarro concludes the Seventh Amendment provides a jury trial right on her Law 247 claim against Universal

Insurance.  *Id.* at 22.  She first states that "the *Gallagher* first-prong analysis is feasible" while conceding that she had not found any "analogous 18th century English-law case of action . . .."  *Id.*  She cites caselaw from Florida, Georgia, Louisiana, and Texas for the proposition that statutory bad faith causes of action have been found to arise in either contract or tort.  *Id.* at 22-23.  Therefore, she claims such actions are sufficiently analogous to common law causes of action to meet *Gallagher*'s first prong.  *Id.* at 23.

Regarding the second *Gallagher* prong, Ms. García-Navarro posits that courts are unanimous that compensatory and punitive damages are legal, rather than equitable remedies.  *Id.* at 24.  However, she states that attorney's fees and costs are equitable remedies.  *See id.* at 24-25 (citing *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1314 (2d Cir. 1993); *Fahy v. Nationwide Mut. Fire Ins. Co.*, 885 F. Supp. 678 (M.D. Pa. 1995)).  Thus, in sum she concludes that she is entitled to a jury adjudication of her Law 247 claim against Universal.  *Id.* at 25.

### 2.    Universal Insurance Company's Opposition

Universal does not contest that the Plaintiff has a constitutional right to a jury trial on her Law 247 claim.  *Universal Opp'n* at 27-28.  Nevertheless, Universal argues that a jury trial is unnecessary in this case because summary judgment is an appropriate means of adjudicating the Law 247 bad faith claims.  *Id.* at 28.  In large part, Universal rehashes the arguments that it made in its Motion for Partial Summary Judgment on these claims.  *Id.* (citing *Universal's Mot. for Partial Summ. J. as to Pl.'s and Hogar La Bella Union's Bad Faith Claims* (ECF No. 313) (*Def.'s*

13

*Partial Summ. J. Mot.*)).  In brief, this argument is that an insured or other claimant cannot prevail on a bad faith claim against an insurer without clear and convincing evidence of bad faith.  *Id.*  Moreover, Universal states that, as a matter of law, an insurer cannot be found to have acted in bad faith when it had a rational legal or factual basis to deny a claim.  *Id.*

Here, Universal claims it had a rational legal basis to deny coverage.  *Id.* at 29. Universal intimates that its denial of coverage was predicated on the Puerto Rico Supreme Court's decision in *Viruet v. City of Angels, Inc.*, 194 P.R. 271 (2015).  *Id.* Universal claims that in *Viruet*, the Puerto Rico Supreme Court interpreted an identical exclusion of coverage clause issued by Universal as precluding coverage on a claim factually similar to Ms. García-Navarro's claim.  *Id.*  Separately, Universal challenges Ms. García-Navarro's assertion that it refused to settle the case within the policy limits arguing that it honestly believed there were defects in the Plaintiff's case.  *Id.*  Namely, Universal cites that Ms. García-Navarro's own medical expert's written statement that "the proximate cause of Mrs. Carlina's death were not Hogar Bella Unión's actions and omissions" but rather "the treatment that Dr. Oscar García-Roman . . . provided to Ms. Carlina Navarro . . .."  *Id.* at 29-30.  In sum, Universal argues that as a matter of law, the Court should reject the Law 247 bad faith claim because (1) it had a plausible legal basis to deny coverage, and (2) its decision to reject a settlement within the policy limits was grounded in a reasonable belief that the Plaintiff's evidence attributed the cause of Ms. Navarro's death to a party other than the insured.  *Id.* at 29-30.  Lastly, Universal alleges that the Plaintiff has no right to

a jury trial on the assigned crossclaims because Hogar La Bella Unión did not request one. *Id.* at 30-31.

### 3.     Jacqueline García-Navarro's Reply

In her reply, Ms. García-Navarro contests the governing legal standard in Universal's likely forthcoming motion for summary judgment on the Law 247 claim. *Pl.'s Reply* at 9.  She claims that, by statute, the burden of proof in all civil cases is a preponderance.   *Id.* at 10.   She further states there is "no binding Puerto Rico authority to the contrary."  *Id.*  Moreover, she contests that Universal will prevail as a matter of law on the bad faith claim, reasoning that the rational basis defense is not found in Law 247 or in jurisdictions with similar causes of action.  *Id.*

Regarding the crossclaims, Ms. García-Navarro argues that at least three factors weigh in favor of a jury trial.  *Id.*  First, "the Crossclaim expressly demands trial by jury on its caption."  *Id.*  Second, Universal waived any objection to a jury trial because its "pretrial memorandum presupposes that the Crossclaim is to be heard by the jury."  *Id.*  Third, the Plaintiff avers that "principles of fairness and judicial economy warrant jury adjudication of the Crossclaim" because she would otherwise need "to have three different trials before she is able to move on to other phases of the litigation."  *Id.* at 11.  In the event the Court finds that she has not met the requirements to obtain a jury trial, she requests leave to amend the Crossclaim and demand a jury trial.  *Id.*

### C.     Apportionment of Liability

#### 1.     Jacqueline García-Navarro's Memorandum

Ms. García-Navarro argues that the money received from her prior settlements in this case should not be deducted from the jury award against Hogar Bella Unión. *Pl.'s Mem.* at 13. Her memorandum describes how Puerto Rican tort law establishes that there are two sets of relationships relevant to apportionment of liability: the internal relationship between joint tortfeasors, and the external relationship between the amalgam of joint tortfeasors and the injured party. *Id.* at 14 (citing *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 P.R. 484, 498-504, --- P.R. Offic. Trans. --- (2003)). Relevant to this case is the internal relationship. *Id.* When one joint tortfeasor contributes more than his or her percentage share of damages to the injured party, that party may seek contribution from other joint tortfeasors, thereby reducing the amount it pays to the injured party. *Id.* (citing *Sagardía de Jesús*, 177 P.R. at 498-504).

Ms. García-Navarro writes that when a case settles, the terms of the settlement agreement determine how liability is apportioned among joint tortfeasors. *Id.* Thus, she continues, a settlement agreement may release a joint tortfeasor from not only its liability to the injured party, but also to its joint tortfeasors. *Id.* at 14-16 (citing *Sagardía de Jesús*, 177 P.R. at 498-504 in which a plaintiff settled internal and external liability with three codefendants for $200,000, received a judgment against a non-settling defendant for $809,778, and the court declined to reduce the judgment by the amount of the settlement).

After explaining that a settlement agreement can release a joint tortfeasor from internal and external liability, Ms. García-Navarro applies the law to this case. *Id.* at 17. She points out that the settlement agreements between Hogar La Bella Unión's joint tortfeasors and herself release those actors from both internal and external liability and includes the text of one such agreement as an attachment to her memorandum. *Id.* at 17 (citing *Pl.'s Mot.*, Attach 2, at 5 (ECF No. 382-2)). Therefore, she concludes reducing the jury award against Hogar La Bella Unión on the basis of prior settlements is improper because the parties which previously settled have been internally released from liability. *Id.* at 17-18.

Ms. García-Navarro's memorandum also addresses how Hogar La Bella Unión's waiver of liability apportionment affects the apportionment analysis just described. *Id.* at 18. She cites caselaw for the proposition that an insurer is not actually a joint tortfeasor for purposes of apportioning liability but may nevertheless be subject to contractual liability for its insured's torts. *Id.* (citing *Arroyo-Torres v. González-Méndez*, 212 F. Supp. 3d 299, 301-02 (D.P.R. 2016)). Therefore, she argues that "the tortfeasor who owned the rights to apportion liability and contribution was Hogar Bella Unión, not Universal Insurance." *Id.* She cites the following portion of Hogar La Bella Unión's insurance policy with Universal:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

*Id.* (citing *Ins. Policy* at 30).

Discussing the import of this contractual provision, Ms. García-Navarro first notes that because the right to apportionment belongs to the tortfeasor, the tortfeasor may lawfully waive that right through a settlement agreement. *Id.* at 19. She states that by admitting the liability for all damages found by the jury, Hogar La Bella Unión "reaffirmed the waiver of its right to request liability apportionment and contribution." *Id.* To the extent Hogar La Bella Unión assigned its apportionment rights through its contract with Universal, she contends that "the insurance company forfeited that contractual right when it failed to honor its duty to defend." *Id.* Therefore, Ms. García-Navarro concludes that "[a]ny request by Universal Insurance to apportion liability, for contribution or to be allowed to concoct joint tortfeasors during the direct/coverage action would be at odds with the waiver of rights effectuated by Hogar Bella Unión." *Id.*

## 2.    Universal Insurance Company's Opposition

In its opposition memorandum, Universal concedes that Ms. García-Navarro accurately stated how Puerto Rican law regulates the liability of joint tortfeasors when a settlement releases both internal and external liability. *Universal Opp'n* at 2. Universal agrees that the amount a plaintiff receives in a settlement from one joint tortfeasor is not deducted from a jury award against the other joint tortfeasors. *Id.* at 3. However, Universal argues that a joint tortfeasor may only be held liable for the percentage of the jury award which the jury attributes to its own fault. *Id.* Put differently, if one joint tortfeasor settles out of a case, the remaining joint tortfeasors will not be compelled to pay for the percentage of fault attributed to that party. *Id.*

18

at 3-4 (citing *Fonseca v. Inter-American Hosp. for Adv. Med.*, 184 P.R. 281, --- P.R. Offic. Trans. ---, 2012 TSPR 3 (2012)[2]; *Bernardi Ortiz v. Cybez Int'l, Inc.*, 345 F. Supp. 3d 107 (D.P.R. 2018)).

Universal next addresses the waiver of liability apportionment between Ms. García-Navarro and Hogar La Bella Unión. *Id.* at 3. It claims that "the only remedy available to a joint tortfeasor who is condemned to pay a monetary amount higher tha[n] the percentage of liability contributed by them is the right of contribution." *Id.* Though, Universal claims "the right of contribution is unavailable as a matter of law when a plaintiff has released the settling joint tortfeasor in the external and internal relationship." *Id.* This is because the release of internal liability abrogates the internal joint tortfeasor relationship. *Id.* at 4. Absent settlement, joint tortfeasors may seek contribution from one another; however, when a joint tortfeasor settles out of a case two things happen. *Id.* First, the settling joint tortfeasor cannot seek contribution from its fellow joint tortfeasors. *Id.* Second, the non-settling joint tortfeasors cannot seek contribution from the settler. *Id.* (citing *Diggs v. Hood*, 772 F.2d 190, 196 (5th Cir. 1985)). As a result, Universal argues that because Hogar La Bella Unión's right to contribution was extinguished by the settlement, it "ceased to exist as a matter of law" and therefore "Hogar La Bella Unión had nothing to waive . . .." *Id.* Universal reasons that the "waiver of liability apportionment" contained in the settlement is unenforceable or has no legal effect. *Id.* at 6.

---

[2]     There is no official translation of this decision of the Puerto Rico Supreme Court; however Universal attached an English translation of *Fonseca v. Interamerican Hospital* as Attachment 2 to its memorandum and the Court assumed the accuracy of the translation absent objection from the Plaintiff. The Court cited the pagination from the attached English translation.

### 3.     Jacqueline García-Navarro's Reply

Ms. García-Navarro states that Universal's position that Hogar La Bella Unión could not waive its right to liability apportionment was "posed with no legal support." *Pl.'s Reply* at 9.  Again, citing *Pueblo v. Torres Nieves*, 5 P.R. Offic. Trans. 467, 4801-81 (1976), she argues that "the holders of private rights enjoy the right to waive them . . . even some of the most fundamental constitutional rights may be waived." *Id.*

### D.     Structuring Future Proceedings

### 1.     Jacqueline García-Navarro's Memorandum

In her conclusion, Ms. García-Navarro reaffirms her position that the Seventh Amendment requires a trial for all claims.  *Pl.'s Mot.* at 25.  However, she indicates that liability on all issues "may be adjudged as a matter of law, via motion practice." *Id.*  She indicates that this is also true for her direct cause of action against Universal and for Universal's arguments that her Settlement Agreement was collusive.  *Id.* at 25-26.

### 2.     Universal Insurance Company's Opposition

Like Ms. García-Navarro, Universal argues that the Court should decide many of the remaining issues by pretrial motions, including motions for summary judgment.  *Universal Opp'n* at 31.  It maintains that "[t]he only issue that will inevitably need trial is the direct cause of action against Universal."  *Id.*  Universal further contends that if the crossclaims and Law 247 claim are not resolved by summary judgment, "a separate trial must be held to accommodate both demands."

*Id.*  Universal requests a forty-five-day discovery window so the parties can gather evidence about the Settlement Agreement's validity.  *Id.* at 32.  However, to proceed, it argues that the Court must first decide whether the Settlement Agreement precludes Universal from contesting its insured's negligence.  *Id.* at 24-27 (discussing "*Interpretation 1*" and "*Interpretation 2*").

### 3.   Jacqueline García-Navarro's Reply

In her reply, Ms. García-Navarro objects to Universal's two preferred approaches to structuring the litigation.  *Pl.'s Reply* at 5-7.  Specifically, she first argues Universal should not be allowed to re-litigate the issues of negligence, causation and damages because that course of litigation "would be at odds with the twin goals of the direct-action statute . . .."  *Id.* at 5.  Because Puerto Rico's direct-action statute merely allows a plaintiff to bring its claims against the insured against the insurer, she states that "[i]t therefore logically follows that, under the mechanics of the direct-action suit, the tort victim need not twice evince negligence, causation and damages."  *Id.* at 6.  Instead, she contends that the only proper course of the litigation is to consider whether the established negligence "gives rise to coverage under the terms of the policy the insurer issued."  *Id.*  Otherwise, Ms. García-Navarro alleges that insurers who breach their duty to defend have a "second bite at the apple" to contest a plaintiff's negligence claim.  *Id.*  Referring to her memorandum of law, she then briefly restates that this approach is consistent with how other jurisdictions proceed in actions where the insurer has breached its duty to defend.  *Id.* at 6-7.

### E.     Collusion

#### 1.     Jacqueline García-Navarro's Memorandum

Ms. García-Navarro's memorandum does not substantively address whether the Settlement Agreement is invalid because it is the product of collusion. *Pl.'s Mem.* at 2. Rather, she states "Universal bears the burden of proof on its collusion contentions . . .." *Id.* She therefore "reserves the right to address them once properly set forth." *Id.*

#### 2.     Universal Insurance Company's Opposition

Universal argues that the Settlement Agreement is invalid because it is the product of illicit collusion between its insured and Ms. García-Navarro. *Universal Opp'n* at 13. Universal first notes that the Puerto Rico Supreme Court has never addressed whether collusion is a valid defense to a settlement agreement when the insurer "has improperly breached its duty to defend." *Id.* Nevertheless, Universal contends "sound principles of insurance law prohibit recovery by a claimant where he or she or the insured have colluded to defraud the insurer." *Id.* (citing *Salvati v. Am. Ins. Co.*, 855, F3d 40 (1st Cir. 2017)). It cites caselaw from a variety of jurisdictions for the proposition that settlement agreements are collusive when they are made to impart liability on a non-party, including an insurer. *Id.* at 14.

Universal notes that some courts have found that "a settlement agreement with consent judgment or a covenant not to execute are *per se* unreasonable since they can never be enforced against an insurer since, based on a policy's 'legally obligated to pay' provisions, the insured is not personally responsible for the ensuing

[judgment]." *Id.* (citing cases). However, other courts merely find that such agreements present "a clear danger of collusion." *Id.* at 15. Universal identifies other factors relevant to the collusion inquiry such as "failure to substantiate claims, failure to rebut claims, suspicious terms of the agreement and concealment." *Id.* Also relevant is whether "the settling insured **failed to consider viable available defenses.**" *Id.* at 16 (emphasis in Universal's *Opp'n*).

According to Universal, the claimant or insured bears the initial burden of proof in a collusion case. *Id.* First, the claimant or insured must "establish the reasonableness of the settlement if the insured received a covenant not to execute as part of the agreement." *Id.* If that party makes a prima facie showing of reasonableness, the burden then purportedly falls to the insurer "to show otherwise by preponderance of the evidence." *Id.*

### a. Jacqueline García-Navarro's Reply

Ms. García-Navarro's reply briefly addresses the collusion claim and considers how the court should structure dispositive motion practice concerning the claim. *Pl.'s Reply* at 7. She states that "the proper procedural vehicle" to resolve collusion "is a dispositive motion." *Id.* For present purposes, she contends that Universal bears the burden to prove its collusion claim, because it is an affirmative defense. *Id.* at 7-8. She argues she has no preliminary burden to show that the Settlement Agreement is reasonable. *Id.* at 7.

23

## III.   DISCUSSION

This is an unusually complicated case.   There are three sets of claims remaining: first, Ms. García-Navarro's direct action against Universal; second, Ms. García-Navarro's statutory action under Law 247; and, third, Hogar La Bella Unión's assigned crossclaims against Universal for (1) bad faith denial of coverage and (2) bad faith refusal to settle within the policy limits.

Two threshold issues apply to all claims.   The first is whether the Settlement Agreement between Ms. García-Navarro and Hogar La Bella Unión is valid, either in whole or in part, under Puerto Rico law.   The second threshold issue is the effect of a valid settlement on all three sets of claims in the litigation and, more specifically, the import of the waiver of liability apportionment provision.   Once the Court decides these questions of law, it must determine how to structure the next phases of litigation.

The Court proceeds sequentially.   The Court first considers whether the Settlement Agreement is valid.   Next, the Court assesses the impact of the Settlement Agreement on the litigation, with special attention to the waiver of apportionment of liability.   Then, the Court analyzes how the Law 247 claim and assigned crossclaims should be tried.   Finally, the Court articulates a framework for continuing this litigation.

This case implicates the Court's diversity jurisdiction and therefore, the Court applies the substantive law of the commonwealth of Puerto Rico. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the

Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State"). State law includes both statutes and legal decisions. *Id.* However, federal procedural law applies. *Id.* If the state substantive law is unclear or undetermined, the federal court should make a reasoned judgment about what state law requires. *See Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*, 693 F.3d 48 54 (1st Cir. 2012) ("[A]s a federal court sitting in diversity jurisdiction, we ought not 'stretch state precedents to reach new frontiers'"). Instead, the Court "must hesitate to chart a new and different course in state law." *See id.* (citing *Kassel v. Gannett Co.*, 875 F.2d 935, 494-50 (1st Cir. 1989)).

To the extent that this case involves unsettled questions of Puerto Rico law, the Court will resolve those questions pursuant to its analysis of Puerto Rico law. However, there is a slight wrinkle. In Puerto Rico "[t]he field of insurance is governed by the Insurance Code . . .." *Event Prods., Inc. v. Tyser & Co*, 854 F. Supp. 35, 38 (D.P.R. 1993). When the Insurance Code is silent on an issue, the Puerto Rico Supreme Court looks elsewhere to decide the case, and "use[s] the most advanced rules in North American law and civil law." *Id.* (citing *San Juan v. Great Am. Ins. Co.*, 813 F.2d 520, 523 (1st Cir. 1987) (Torruella, J.)).[3] The Court adheres to this command in reaching its legal conclusions.

---

[3]      In *Great Am. Ins. Co.*, 813 F.2d at 523, the First Circuit cites an excerpt from a Puerto Rico Supreme Court decision attached as an appendix to the *Tyser* decision, *Municipality of San Juan v. Great American Insurance Company*, No. CE-36-31 (June 30, 1986). In that decision, the Puerto Rico Supreme Court addressed several questions of law certified by the First Circuit.

### A.     Validity of the Settlement Agreement

At this juncture, the fulcrum of this litigation is whether the Settlement Agreement between Hogar La Bella Unión and Ms. García-Navarro is valid. Universal challenges the agreement on three grounds: illicit consideration, public policy, and collusiveness.

Federal courts may enforce settlement agreements before the original suit is dismissed.  *See Vitalife, Inc. v. Omniguide, Inc.*, 350 F. Supp. 3d 32, 33-24 (D.P.R. 2018) (citing *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999)).  In Puerto Rico, settlement agreements are "contracts of compromise."  *Id.* (citing 31 L.P.R.A. § 4821).  A contract of compromise is formed when (1) the parties consent, (2) the subject of their agreement is the litigation between them, and (3) the purpose of the contract is to end the controversy through settlement.  *Id.* (citing *Caraballo Cordero v. Banco Financiero*, 208 F. Supp. 2d 185, 190 (D.P.R. 2002).  Contracts of compromise are given res judicata effect between the parties.  31 L.P.R.A. § 4827 ("A compromise has, with regard to the parties, the same authority as res adjudicata; but summary proceedings shall not be proper except when the fulfilment of a judicial compromise is in question").

Puerto Rico's general rules of contract law and construction apply to settlement agreements.  *Citibank Global Mkts., Inc v. Rodriguez Santana*, 573 F.3d 17, 26-27 (1st Cir. 2009).  "A contract exists from the moment one or more persons consent to bind himself or themselves with regard to another or others, to give something or to render some service."  31 L.P.R.A. § 3371.  "The contracting parties may make the

agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." *Id.* § 3372.

### 1.   Unlawful Consideration

#### a.   Legal Standard

Under Puerto Rico law, "[c]ontracts without consideration or with an illicit one have no effect whatsoever." *Id.* § 3432.  Consideration "is illicit when it is contrary to law and good morals." *Id.*  Consideration is assumed to be lawful, unless proven otherwise. *Id.* § 3434.  Caselaw in Puerto Rico establishes that when contracting parties contract to cause harm to a third-party, the consideration is illegal. *See Punta Lima, LLC v. Punta Lima Dev. Co., LLC*, 440 F. Supp. 3d 130, 140 (D.P.R. 2020) (citing *Dennis v. City Fed. Savs. & Loan Ass'n*, 21 P.R. Offic. Trans. 186, 202 (P.R. 1988)).

Under *Dennis* and *Punta Lima*, to show that a contract is unenforceable because it prejudices a third-party, the third-party must show four elements. *Id.* at 141.  First, the third-party must show that they have been affected by the contract. *Id.* at 142.  Second, the third-party "must show harm to its rights." *Id.* This inquiry is "demanding because it is only satisfied by certain types of harm." *Id.* What must be shown is "harm of violation of a concrete subjective right" but "no injury is caused to third persons if the interests at stake are not specially protected interests." *Id.* (citing *Dennis*, 21 P.R. Offic. Trans. at 203).

Relevant caselaw clarifies this hazy legal standard.  In *Dennis*, the Puerto Rico Supreme Court found that a third-party option-holder suffered harm to his exclusive

purchase rights when the property's owner sold the property to a different buyer during the life of the option. *Id.* (citing *Dennis*, 21 P.R. Offic. Trans. at 203-04). This was sufficient injury because "the sale contract 'eliminated the exclusive reserve of the right to buy [the property] which was the object of the option.'" *Id.* (citing *Dennis*, 21 P.R. Offic. Trans at 204).

Different facts produce different results. Three years after *Dennis*, the Puerto Rico Supreme Court again addressed the injury requirement in *Dolphin International of Puerto Rico, Inc. v. Ryder Truck Lines, Inc.*, 127 P.R. 869 (P.R. 1991) (officially translated to English). The Puerto Rico Supreme Court found that *Dennis*'s injury prong was not met when a Florida business hired a Puerto Rico business to act as its commercial agent. *Id.* at 885, n.11. There, when the Florida company terminated the contract and hired some of the agent's employees, the agent company sought a rescission of those contracts under *Dennis* claiming the hiring prejudiced the agent's employment contracts with those individuals. *Id.* The Supreme Court of Puerto Rico reasoned that no injury occurred under *Dennis* because the employees "could resign from their jobs with Dolphin at any time and for any reason" and "Dolphin had no right to require its employees to stay with the company." *Id.* Accordingly, *Dolphin* makes clear that *Dennis*'s injury requirement is met only by an injury to specific and vested legal rights, rather than a general claim that the contract produces adverse effects. *Punta Lima*, 440 F. Supp. 3d at 143.

Two more cases illustrate the injury requirement. In *Twin County Grocer's Inc. v. Mendez & Co.*, 81 F. Supp. 2d 276 (D.P.R. 1999), another judge in this district

wrote that "there must be an injury – a breach or violation of a substantive contractual right – to the third party caused by said contract." *Id.* at 292. *Twin County* rejected summary judgment on the plaintiff's contract in prejudice of a third party claim because there were "currently doubts as to the contractual rights claimed . . .." *Id.* Thus, even when a third-party has specific contractual rights that have been impaired, rescission of the allegedly prejudicial contract is improper when the scope of the third-party's allegedly injured rights is uncertain. *Id.*

Finally, the recent case of *Punta Lima LLC v. Punta Lima Development Co., LLC*, 440 F. Supp. 3d 130 (D.P.R. 2020) provides a synthesized statement of law on *Dennis*'s injury prong. *Id.* at 143-49. There, after conducting a treatise-level review of the *Dennis* cause of action, the Court concluded that the cause of action sought to balance freedom of contract against the rights of third-parties to be unharmed by the negative externalities of contracts. *Id.* at 146 (noting that the *Dennis* doctrine "protects third-parties at the expense of autonomy"). However, in striking this balance, the Court observed that caselaw from the Puerto Rico Supreme Court "does not always privilege third parties." *Id.* Far from it, the third-party will only prevail on a *Dennis* claim when their injured right is "incompatible with the contracting parties' exercise of autonomy." *Id.*

Drawing from *Dennis*, the *Punta Lima* Court recognized that "[t]he *Dennis* court found injury because the sale of the property 'eliminated the exclusive reserve of the right to buy [the property]' in the third party's option." *Id.* (citing *Dennis*, 21 P.R. Offic. Trans. at 204). Conversely, the losing party in *Dolphin* had no right,

contractual or otherwise, to compel its employees to work for it against their will. *Id.* at 147-46. The *Punta Lima* Court reasoned that the *Twin County Grocers* result is also supported by this principle because "[a]ny sale between a seller and her customers is likely to take wealth away from the seller's competitors." *Id.* at 147. Accordingly, "this type of externality is not cause to nullify a contract pursuant to *Dennis* without something more, like a contract by which the seller's competitor had a right to that sale." *Id.*

The *Punta Lima* Court gleaned one more lesson from the body of caselaw applying *Dennis*. Simply put, "[t]he *Dennis* doctrine is not an insurance policy for [the third-party's] exercise of autonomy." *Id. Punta Lima* notes that the employer in *Dolphin* could have chosen to make its employee's subject to non-compete agreements, and that including this provision would have likely provided "the right necessary to a *Dennis* claim." *Id.* Nevertheless, the employer "decided, through its autonomy and contractual freedom, to structure its contractual relation with the employees in such a way that made it vulnerable to the precise type of harm which it complained." *Id.*

Having explained the legal doctrine surrounding a *Dennis* claim, the *Punta Lima* Court concluded that its *Dennis* claimant had failed to "allege a specially protected interest" and that "its juridical relationship is not incompatible with the disputed contract." *Id.* There, a third-party contended he was injured because an agreement between parties to amend a foreclosure agreement and revive previously extinguish debt impaired his rights to collect rent on the property. *Id.* The Court

30

reasoned that the third-party's argument "misses the mark" because, even though he may have had a contractual right to rents, he had no right to prevent the contracting parties from reviving the debt. *Id.* Therefore, a *Dennis* claim was improper because, although the contract impaired the third-party's right to rents, it was not incompatible with the contracting parties' rights. *Id.*

The *Punta Lima* Court rejected the *Dennis* claim on a second ground. *Id.* Specifically, the third-party had voluntarily entered into a subrogation agreement with one of the contracting parties. *Id.* As such, the Court decided a *Dennis* claim was improper because the third-party "chose to structure its relationship to [a contracting party] in a manner that made it vulnerable to the harm of which it now complains." *Id.*

The final two prongs of *Dennis* are whether causal nexus exists between the contract and the third-party's injury and whether the contracting parties intended to harm the third-party. *Id.* at 143-44. Causation is present when the harm to the third-party was the "direct and immediate result" of the contract. *Id.* (quoting *Dennis*, 21 P.R. Offic. Trans. at 204). Intent is present when one or both of the contracting parties aims to harm the third-party. *Id.* Under *Dennis*, the third-party must show that the injuring parties "acted tortuously, with knowledge of the contract's existence, or the third person's artificial relation." *Dennis*, 21 P.R. Offic. Trans. at 205. In *Dennis*, mere knowledge of the third-party's option to purchase the land at issue was sufficient to find the contracting parties intended to injure the option-holder. *Id.*

### b.    Application

The Court finds that Universal's *Dennis* challenge to the Settlement Agreement is without merit.  Universal claimed that rescission of the agreement is proper under *Dennis* because the agreement expands its liability beyond the limits of its policy covering Hogar La Bella Unión.

### i.    Universal's Breach of the Duty to Defend

To begin, the Court is dubious that the *Dennis* third-party analysis applies to the circumstances here.  None of the cases applying *Dennis* involves an insurance contract and a coverage dispute between an insured and its insurer, and it strikes the Court that the *Dennis* line of caselaw is an awkward fit.  This is because to the extent Universal is a third party, it is a third party by choice and in contravention of its contractual obligations under its insurance policy.  Furthermore, whenever an insurer declines to provide a defense to an insured, the insured actions in defending itself have potential consequences for the insurer.  If *Dennis* applied to settlements arrived at between a plaintiff and the insured, it would handicap an insured's ability to defend itself against the pending lawsuit for fear that the insurer, who disclaimed the defense, would oppose the resolution on the ground that it might be held accountable under its insurance contract.  In effect, the insurer, having forsworn the duty to defend, would nevertheless control the defense.  The Court is skeptical that the *Dennis* rationale affects the way an insured defends itself in these circumstances.

Universal acknowledges that Hogar La Bella Unión is its insured under a commercial policy 09-515-000339285-3/000 effective from May 15, 2015 to May 15,

2016 with policy limits of $300,000.  *Ins. Policy* at 1-53.  The named insured is Maria

Betancourt Aulet doing business as Hogar La Bella Union.  *Id.* at 8, 10.  The

Universal commercial policy contains the following standard insuring agreement:

> We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to which
> this insurance applies.  We will have the right and duty to defend the
> insured against any "suit" seeking those damages.  However, we will
> have no duty to defend the insured against any "suit" seeking damages
> for "bodily injury" or "property damage" to which this insurance does not
> apply.  We may, at our discretion, investigate any "occurrence" and
> settle any claim or "suit" that may result.

*Id.* at 19.

The Supreme Court of Puerto Rico has addressed the scope of an insurer's duty

to defend under the terms of an insurance policy.  *Caraballo*, 122 D.P.R. at 2-3.  Under

Puerto Rico law, an insured's right to legal representation arises from the insurance

contract and as the "purpose of the policy is to protect the insured," the "duty to

defend the insured in actions against him is an essential part of the coverage

contracted with the insurance company."  *Id.*  "The duty to defend the insured in

actions covered by the policy should be measured, at the first instance, by the

allegations in the complaint filed in the specific case."  *Id.* at 7.  The Supreme Court

of Puerto Rico directed the courts to "examine all the allegations made by the plaintiff

and, based on a joint interpretation of the same, determine whether there is a

possibility that the insured is protected by the policy issued in his favor."  *Id.*  The

*Caraballo* Court observed that the "duty to defend is ampler than the duty to

compensate; it is independent from the outcome of the suit and from the imposition

of liability finally made by the court."  *Id.*  Moreover, if "some of the pleadings in the

complaint are covered by the policy, and others are not covered or could not be covered, the insurance company has the duty to assume the insured's defense even in those claims not covered by the policy." *Id.* The Supreme Court of Puerto Rico concluded that "[a]ny doubt as to whether there is a duty to defend must be solved in the insured's favor." *Id.* In *Caraballo*, when the insurance company refused to acknowledge its duty to defend, the Supreme Court of Puerto Rico concluded that the insurer was required to reimburse its insured for the amounts he spent in attorney's fees plus the costs. *Id.*

In 2014, the Court of Appeals for the First Circuit elaborated on the standard for the duty to defend under an insurance contract. *W Holding Co. v. AIG Ins. Co.*, 748 F.3d 377 (1st Cir. 2014). Quoting *Cuadrado Rodríguez v. Fernández Rodríguez*, No. KLCE200601588, 2007 P.R. App. LEXIS 4076, 2007 WL 1577940, at *5 (TCA Mar. 30, 2007), the First Circuit observed that "Puerto Rico law holds that an insurance company must advance defense costs if a complaint against an insured alleges claims that create even a 'remote possibility' of coverage." *Id.* at 384. The *W Holding* Court emphasized the liberality of that standard: "Not an 'actuality' of coverage. Not even a 'probability' of coverage. No, a mere 'possibility' of coverage will do — regardless of how 'remote' it may be." *Id.* The First Circuit stressed that "having lost the likelihood-of-success skirmish, [the insurer] may still 'win' the coverage 'war at the succeeding trial on the merits.'" *Id.* at 386.

The next point is that Puerto Rico law allows for a direct action by an injured person against the insurer of the alleged tortfeasor. 26 L.P.R.A. §§ 2001, 2003. As

the First Circuit wrote in *Fraticelli v. St. Paul Fire & Marine Insurance Co.*, 375 F.2d 186 (1st Cir. 1967), "[u]nder this statue a person who sustains loss or damage as a result of the fault or negligence of the insured may, at his option, bring suit directly against the insurer - - which direct action exists by reason of the insurance contract." *Id.* at 188.  Furthermore, the injured person may initiate the direct action against the insurer in the same lawsuit as the action against the alleged tortfeasor.  26 L.P.R.A. § 2003(1) ("Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly").

With this legal background, the Court turns to what Universal has done (or more precisely has not done) in this case.  On February 23, 2017, Jacqueline García-Navarro filed a complaint against Hogar La Bella Unión and its insurer, although the Plaintiff did not know the name of Hogar's insurer at the outset of the litigation. *Compl.* (ECF No. 1).  On March 15, 2018, Ms. García-Navarro impleaded Universal as Hogar's insurer.  *First Am. Compl.* (ECF No. 72).  The First Amended Complaint contained a new Count III that asserted a direct action against Universal as Hogar's insurer.  *Id.* at 18-19.   On May 9, 2018, Universal answered the First Amended Complaint and denied that it provided coverage to Hogar for the allegations in the First Amended Complaint.  *Answer to First Am. Compl.* at 15 (ECF No. 98) ("It is affirmatively asserted that, pursuant to its terms and conditions, said policy provides no coverage for plaintiff's claims").

On August 15, 2018, Universal raised its coverage defense in a motion for summary judgment. *Mot. for Summ. J.* (ECF No. 111). After Universal's motion was fully briefed, the matter came for oral argument on December 11, 2018 before United States District Judge William G. Young, the judge then assigned the case. *Min. Order* (ECF No. 166); *Tr. of Video Conf. Hr'g Before: Judge William G. Young* (ECF No. 216) (*Judge Young Tr.*). Attorneys for both Universal and Ms. García-Navarro presented their arguments. *Judge Young Tr.* at 6:16-10:12. Judge Young issued the following ruling:

> Here's the order of the court. Universal's motion for partial summary judgment is allowed insofar as it related to any allegations arising out of a failure to call 911, and it's denied as it relates to the failure to keep records of personal information, um, on file and insofar as it relates to miscommunicating to the treating physician about the blood transfusion. Those allegations are not professional services and, um, the case will go forward as to those against the facility.

*Id.* at 10:18-11:1. Judge Young ruled that Universal provided coverage for some but not all the pleadings. Under *Caraballo*, from the time of Judge Young's ruling onward, Universal owed Hogar the duty to defend the lawsuit. 255 D.P.R. 105, ¶¶ 8-10 ("If some of the pleadings in the complaint are covered by the policy, and others are not covered or could not be covered, the insurance company has the duty to assume the insured's defense even in those claims not covered by the policy"). Even if Universal disagreed with Judge Young's ruling, there was at the very least more than "mere 'possibility' of coverage" because Universal had a judicial ruling that it provided coverage for some of Ms. García-Navarro's claims. Therefore, under clear

precedent from both the Puerto Rico Supreme Court and the First Circuit, Universal owed a Hogar the duty to defend the entire lawsuit.

But Universal continued to refuse to provide Hogar with a defense.  Instead, Universal challenged Judge Young's ruling.  On March 14, 2019, Universal moved for reconsideration of the judge's December 11, 2018 ruling.[4]  *Mot. Recons. of Order at Docket No. 199* (ECF No. 201).  On July 11, 2019, the Court issued an extensive order addressing the issues Universal had raised.  *Order on Mot. to Strike Crosscl., Mot. to File Amended Compl. and Mot. in Compliance* (ECF No. 233).  In its July 11, 2019 order, the Court made explicit its view that Universal owed Hogar a defense.  *Id.* at 22 ("[I]t strikes the Court that however justified Universal's denial of coverage may have been before Judge Young's December 11, 2018 coverage ruling, it has become untenable since then.  Once Judge Young ruled that Universal provided coverage for at least two of the legal theories against Hogar La Bella Unión and Ms. Betancourt, Universal's apparent failure to comply with its duty to defend its insureds and its persistent refusal to accede to the judicial ruling on coverage have left Universal vulnerable to a charge not only of breach of contract, but also of bad faith").

---

[4]    The context of this ruling is confusing.  After Judge Young's December 11, 2018 ruling, Ms. García-Navarro moved in limine to exclude reference to policy exclusions at trial.  *Mot. Submitting Amended in Limine Req. for Inclusion and Exclusion of Evid. at Trial* (ECF No. 292).  On March 14, 2019, Judge Young ordered that "[n]o evidence shall be received as to the insurance policies exclusions or limitations (although the limitation of course bounds the damages recoverable)".  *Order* (ECF No. 199).  On March 14, 2019, Universal moved for reconsideration of Judge Young's ruling earlier that day.  *Mot. Recons. of Order at Docket No. 199* (ECF No. 200).  In its motion for reconsideration, Universal argued that the December 11, 2018 ruling did not decide the issue of coverage.  *Id.* at 2-5.  Although framed as a ruling on a motion to reconsider a ruling on a motion in limine, Universal's motion for reconsideration was directed to the coverage issue.

With these series of orders, it seems plain that Universal owed its insureds a duty to defend the García-Navarro claim.  Yet Universal failed or refused to provide insurance defense counsel to Hogar and Ms. Betancourt.  As the case approached trial in the fall of 2019, Hogar and Ms. Betancourt were represented by their own, privately-retained counsel and Universal by its own counsel.  On October 28, 2019, Ms. García-Navarro and Hogar and Ms. Betancourt arrived at a settlement in which Hogar and Ms. Betancourt accepted liability as to all claims asserted in the Third Amended Complaint, Hogar and Ms. Betancourt waived liability apportionment, and they assigned and transferred their cross-claim rights to Ms. García-Navarro. *Informative Mot. Regarding Settlement and Urgent Req. for Order* at 1 (ECF No. 331). On October 28, 2019, the Court ruled that it would proceed with a jury trial only on damages.  *Order* (ECF No. 332).

On October 31, 2019, Universal gave notice that it elected not to participate in the damages trial scheduled to begin on November 4, 2019.  *Notice of Universal Ins.'s Position and Non-Participation as to the Damages Only Trial that is Scheduled to Start on Nov. 4, 2019* (ECF No. 355).  On October 31, 2019, the Court issued an order, correcting certain misstatements by Universal and accepting Universal's decision not to participate in the trial.  *Order on Universal Ins. Co.'s Position and Non-Participation as to the Damages Only Trial* (ECF No. 357).  The jury trial went forward as scheduled on November 4, 2019 with Plaintiff represented by her counsel and Hogar and Ms. Betancourt represented by their private counsel; Universal did not participate.  On November 5, 2019, a jury issued a verdict in favor of Ms. García-

Navarro and against Hogar and Ms. Betancourt in the amount of $950,000.  *Jury Verdict Form* at 1.

Universal now challenges the terms of the settlement agreement between Ms. García-Navarro and Hogar and Ms. Betancourt, but — putting aside for the moment issues of collusion — it is difficult to understand how Universal, having rejected its duty to defend the lawsuit, can now complain about the way the lawsuit was defended.  Under the terms of the Universal policy, Universal agreed to pay "sums that the insured becomes obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."  *Ins. Policy* at 19.  The Universal policy provides: "We will have the right and duty to defend the insured against any 'suit' seeking those damages."  *Id.*  Once Universal assumed the right and duty to defend, the policy provides that "We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result."  *Id.*

This defense clause has "two purposes: bind the insurer to assume the insured's defense and provide the rights associated with the defense."  *Metlife Capital Corp. v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d 374, 387 (D.P.R. 2002) (citing *PFZ Props. v. General Accident Ins. Co.*, 134 D.P.R. 881, 893 (P.R. 1994)).  If the insurer breaches its duty to defend its insured, the insured "is entitled to costs and attorneys fees."  *Zurich Am. Ins. v. Lord Elec. Co. of P.R.*, 986 F. Supp. 2d 104 (D.P.R. 2013) (quoting *Great Am. Ins. Co.*, 813 F.2d at 521 (1st Cir. 1987)). However, one of the consequences of Universal's decision not to defend Hogar and Ms. Betancourt and thereby comply with the first purpose of the defense clause, is that Universal waived

39

its right to benefit from the second purpose, namely the right to direct the defense. If Universal had complied with its duty to defend Hogar and Ms. Betancourt, it could have exercised its right under the policy to enter into or not to enter into a settlement with Ms. García-Navarro and to resolve or try the case.[5]

Nor would Universal have waived its coverage issues by complying with its duty to defend its insured. It is common for an insurer that wishes to preserve the issue of coverage and yet comply with its duty to defend to issue a reservation of rights letter to its insured, preserving its right to challenge whether its policy indemnified the claimed loss. Here, however, there is no evidence that Universal ever issued a reservation of rights letter to Hogar and Ms. Betancourt.

Outside the edges of collusion, the Court is skeptical that an insurance company, having made the conscious decision not defend an insured, can be heard to complain about the way the insured defended itself. In short, the Court is doubtful that *Dennis* operates to hold an insurer harmless from its own conscious choices to disregard its contractual obligations to its insured.

### ii. *Dennis* and Third-Party Damage

Nevertheless, as the parties present the issue as a *Dennis* question, the Court will proceed as if *Dennis* could apply. At the outset, the Court assumes that the first, third, and fourth elements of the *Dennis* test are met. Regarding the first factor, the Settlement Agreement admits Hogar's liability and therefore likely affects Universal's obligations to make payments under the policy to Ms. García-Navarro on

---

[5]     The right to defend an insured under an insurance policy is not unlimited. But that is not before the Court because Universal has never recognized its duty to defend.

behalf of Hogar La Bella Unión.  Regarding the third factor, causation, Universal's exposure to liability under the policy is a direct result of the agreement admitting liability.  Finally, the fourth factor is likely met because both Ms. García-Navarro and Hogar La Bella Unión knew of Universal's insurance policy for Hogar La Bella Unión.

Assuming the first, third, and fourth prongs of *Dennis* are met, the Court considers whether Universal has shown the Settlement Agreement meets *Dennis'* injury requirement.  On the record before the Court, it does not.  First, Universal has not shown a concrete subjective injury to its legal rights.  As in *Punta Lima*, Universal failed to show that the contract between Hogar La Bella Union and Ms. García-Navarro is incompatible with its own rights because Universal has not shown that the Settlement Agreement impairs any of its own rights under its insurance contract with Hogar La Bella Unión.  Rather, it has merely stated that the Settlement Agreement will, without its consent, make it liable under the existing insurance policy.  But Universal did provide some coverage to Hogar and the fact that it might be required to pay under the terms of its coverage is not a harm caused by the settlement agreement between Ms. García-Navarro and Hogar.  *See Consejo de Titulares del Condominio Plaza Esmeralda Y Otros v. Mapfre Praico Ins. Co.*, No. KLCE202000643, 2020 P.R. App. LEXIS 1917, at *25-26 (App. Ct. First Instance, San Juan Judicial Region Sept. 24, 2020) ("[A]llowing an insured to assign its right to proceeds of an insurance policy (post-loss) does not modify the insurer's risk. The insurer's obligations are fixed at the time the loss occurs, and the insurer is obligated to cover the loss agreed to under the terms of the policy").  Under *Dolphin* and *Punta*

*Lima*, such a generalized financial injury is insufficient for *Dennis*. As in *Dolphin*, Universal could have structured its legal relationship differently to prevent this financial detriment.

The Court is also persuaded by the language in *Punta Lima* that "[t]he *Dennis* doctrine is not an insurance policy for one's own exercise of autonomy." *Punta Lima*, 440 F. Supp. 3d at 147. Universal's insurance policy for Hogar La Bella Unión provides that "[Universal] may, at [its] discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." *Ins. Policy* at 19. In this case, Universal exercised its autonomy to not settle Ms. García-Navarro's claim against Hogar La Bella Unión. In doing so, Universal assumed the risk that the parties would settle without its involvement on terms unfavorable to its interests. Universal could have included an insurance policy provision reserving a right to approve or deny settlements reached by its insured. It did not. Thus, just as in *Punta Lima* and *Dolphin*, Universal has failed to show a concrete subjective injury under *Dennis*.

### 2. Public Policy

#### a. Legal Standard

As the First Circuit explained, public policy in Puerto Rico disfavors double-recovery of tort damages. *Gómez v. Rodríguez-Wilson*, 819 F.3d 18, 21-22 (1st Cir. 2016). The rationale for this rule "is rooted in 'the principle that no one should or may unjustly enrich himself by receiving double-compensation for the same accident.'" *See id.* at 22 (quoting *Villarini-García v. Hosp. del Maestro*, 112 F.3d 5, 7 (1st Cir. 1997). For that reason, when settling and non-settling tortfeasors are liable

for the plaintiff's injuries, "it makes sense to require an offset" of the non-settling tortfeasor's liability. *Id.* (citing *Portugés-Santana v. Rekomdiv Int'l, Inc.*, 725 F.3d 17, 27 (1st Cir. 2013). This offset is not dollar-for-dollar. *Río-Mar Assocs., LP v. UHS of P.R., Inc.*, 522 F.3d 159, 165 (1st Cir. 2008). Instead, the non-settling defendant's liability, as determined through the judicial process, is offset only by the percentage of damages which the trier-of-fact attributes to a settling tortfeasor. *See id.* (citing *Szendrey v. Hospicare*, 158 P.R. 648 (P.R. 2003)).

Offsetting a damages award is improper when the trial court makes no finding that other defendants, such as settling defendants, bear a percentage share of fault. *Gómez*, 819 F.3d at 22-23 ("if the settling tortfeasor is not adjudged any share of responsibility then there may not be an offset"). Finding fault by a settling party is necessary for the litigating party to obtain apportionment. *Id.* (citing *Sagardía de Jesús v. Hosp. Auxilio Mutuo*, 177 P.R. 484 (P.R. 2009) where the Supreme Court of Puerto Rico found offset improper because the trial court made no affirmative finding regarding the apportionment).

### b.    Application

The Court is confident the Settlement Agreement does not permit double recovery and is therefore valid under Puerto Rico law. Here, the jury issued no verdict and made no finding that any party other than Hogar La Bella Unión was responsible for the injuries. *Jury Verdict Form* at 1. Consistent with the jury verdict, the Settlement Agreement merely admits Hogar La Bella Unión was completely liable for the Plaintiff's injuries. Without a jury finding that another party was at

fault for a percentage of the damages, the Court would err by finding double-recovery present here.

As the caselaw demonstrates, the fact that the Plaintiff previously settled with the other joint tortfeasors does not somehow transform the jury award into an impermissible double recovery.  Rather, because the jury award against Hogar La Bella Unión apportioned no fault to other parties, that recovery was singular and legally unaffected by the Plaintiff's other settlements.  Therefore, public policy against double recovery does not invalidate the Settlement Agreement.

### 3. Collusiveness

At this juncture, the Court has concluded that it lacks enough knowledge of Puerto Rico law to determine whether collusion invalidates the Settlement Agreement.  Further briefing is needed on the issue.  In many jurisdictions, including several within the First Circuit, collusion between a claimant and an insured limits the application of the settlement agreement against the insurer.  *See Capitol Specialty Ins. Corp. v. Higgins¸* 953 F.3d 95, 106-08 (1st Cir. 2020) (discussing that consent judgments and settlement agreements formed without an insurer's participation pose a risk of collusion and have limited application); *Salvati v. Am. Ins. Co.*, 855 F.3d 40, 52 n.14 (1st Cir. 2017) (In Massachusetts, "the dangers of possible collusion between the insured, the primary insurance carrier, and the plaintiff means that courts must always take steps to ensure that settlements are reached in good faith" ); *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 295-96 (1st Cir. 2005) (reasoning that although the Maine Supreme Judicial Court had not yet decided the question,

settlements procured through collusion were likely unenforceable against an insurer because "Maine would not want to encourage collusion or fraud").

Universal cited only one case from Puerto Rico concerning collusion in the insurance settlement context. *Universal Mem.* at 13 (citing *SLG Albert-García v. Integrand Insurance*, 196 P.R. 382 (P.R. 2016)). The Court has attempted to retrieve this case, but it is only available in Spanish, and Universal has not provided the Court with an English translation. For her part, Ms. García-Navarro has not submitted any pertinent legal authority on the collusion issue. Instead, claiming collusion is an affirmative defense, she contends that the burden of proving the affirmative defense of collusion falls on Universal. *Pl.'s Reply* at 7-8. She requests that after ruling on which party bears the burden of proof on collusion, the Court permit dispositive motions about it. *Id.* at 7. Universal requested motion practice on this issue as well. *Universal Mem.* at 13.

The Court agrees with the parties that more briefing is needed on the collusion issue. If the parties wish to submit additional briefing, they will need to agree on a briefing schedule and submit it to the Court or, alternatively, the Court will impose a schedule. Furthermore, if the parties cite Puerto Rico authority for which there is no official English translation, the parties must submit English translations. In their memoranda, the parties should also discuss the applicable burden of proof. For the moment, neither party has persuasively shown that the other bears the burden of proof on collusion. It may be that collusion is, as Ms. García-Navarro claims, an affirmative defense to the Settlement Agreement's admission of negligence.

However, it may be that Ms. García-Navarro bears the burden of proving reasonableness and the absence of collusion.[6]

Because it requires further briefing, the Court declines in this order to invalidate the Settlement Agreement on collusion grounds.  This issue is not resolved.  The parties must submit further memoranda and motions on the issue.

### B.      Application of the Settlement Agreement

#### 1.      The Settlement Agreement and Preclusion

The Court next considers how Hogar La Bella Unión's admission of negligence and Settlement Agreement affects this litigation going forward.  The parties agree that the Supreme Court of Puerto Rico has never decided whether an insured's admission of negligence in a settlement agreement precludes the insurer from contesting its insured's negligence in subsequent litigation.  *See Pl.'s Mem.* at 5-6 ("Unfortunately, however, there is no case law in Puerto Rico establishing the remedies available in cases like this one, where the insurer has breached the duty to defend and as a result its insured settled the underlying claims."); *see also Universal Mem.* at 10-11 ("While Puerto Rico law is silent as to the effects of a settlement agreement entered by the claimant and insured after an insurer has failed to honor its duty to defend, other jurisdictions have handled this issue").

---

[6]      Ms. García-Navarro appears to give offensive collateral estoppel-like effect to the Settlement Agreement's admission of negligence and subsequent jury damages verdict.  If this theory is applicable, the law is clear that in the context of collateral estoppel, she would bear the burden of proof.  *See Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 70 (1st Cir. 2008) ("Once properly raised, a party asserting preclusion must carry the burden of establishing all necessary elements").

The Court has also determined that, aside from the doctrines of res judicata and collateral estoppel, there is no law directly on point in Puerto Rico.  *See A&P v. Asociacion Cana*, 110 P.R. 753 (P.R. 1981) (explaining collateral estoppel).  When a state supreme court has not yet "spoken directly to an issue, the federal court must make an informed prophecy as to the state court's likely stance."  *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).  This "informed prophecy" amounts to a reasoned estimation of what state law on the issue is likely to be.  *Id.*  In making this prophecy, "the federal court may draw upon a variety of sources that may be reasonably thought to influence the state court's decisional calculus."  *Andrew Robinson Int'l*, 547 F.3d at 51.  These sources include decisions from the state's highest court, lower state court decisions, decisions from other jurisdictions, treatises, and policy principles.  *Id.* at 51-52 (citing *Blinzler v. Marriott Int'l Inc.*¸81 F.3d 1148, 1151 (1st Cir. 1996); *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734-35 (1st Cir. 1990)).  As the First Circuit has explained, "the federal court's objective is not to choose the legal path that it deems best but, rather, to predict what path the state court would likely travel."  *Id.* at 52.

Absent caselaw in Puerto Rico, the Court turns to the law of other jurisdictions.  Courts are divided on the preclusive effect of a settlement when an insurer refuses to defend its insured, the insured settles with the claimant and admits negligence, and the claimant attempts to use the admission against the insurer in later litigation.  3 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition, § 17.07[3] (LexisNexis) (NEW APPLEMAN ON INSURANCE).  A minority of jurisdictions apply a

strict estoppel approach. *Id.* § 17.07[3][a]. Sometimes called the "Illinois Rule," under this approach, if an insurer breaches its duty to defend it is estopped from challenging either negligence or coverage in later actions. *Id.*; *Title Indus. Assur. Co., R.R.G., v. First Am. Title Ins. Co.*, 853 F.3d 876, 892 (7th Cir. 2017) ("This Illinois rule of estoppel is strong stuff, but it is intended to protect insureds' reasonable expectations of coverage when they most need it."); *Tidyman's Mgmt. Servs. v. Davis¸* 2014 MT 205 ¶ 25, 330 P.3d 1139, 1150 (Mont. 2014) ("[A]n insurer who breaches the duty to defend is liable for the full amount of the judgment, including amounts in excess of policy limits"); *Employers Ins. v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134 (Ill. 1999) ("[I]nsurers which breach the duty to defend are generally estopped from raising policy defenses to coverage"). Variations of this first approach characterize the insurer's position not as being estopped from challenging coverage by virtue of the prior settlement or judgment, but rather, having waived its coverage defenses entirely. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 240-41 (4th Cir. 1990) ("[B]y breaching its duty to defend an insurer waives any opportunity to litigate whether the underlying events occurred within the policy period . . ..").

The caselaw makes manifest that the concept of fairness underlies this first approach. *See Title Indus.*, 853 F.3d at 891-92. When an insurer breaches its duty to defend, the insured is vulnerable. *Id.* It will likely incur unexpected expenses associated with its defense. *See id.* at 891 ("The world is a dangerous and litigious place. People and businesses buy liability insurance in large part for the peace of

mind – the knowledge that if one is sued, the insurer will provide a legal defense") (internal citations omitted). Moreover, an insured left undefended by its insurer may face colossal liability from the claims brought against it. *Id.* Estopping the insurer from relitigating its liability in a later action encourages it to honor its contractual duties to its insured. *See Ames v. Cont'l Cas. Co.*, 340 S.E.2d 479, 485 (N.C. Ct. App. 1986) ("By denying liability and refusing to defend claims covered by the insurance policy, the insurance company commits a breach of the policy contract and thereby waives the provisions defining the duties and obligations of the insured . . ..").

Most jurisdictions reject the estoppel approach. 3 NEW APPLEMAN ON INSURANCE § 17.07[3][b]. Instead, they find that settlements entered into after an insurer breaches its duty to defend have a limited effect. *Id.* In those jurisdictions, an insurer may still raise coverage defenses in a later action. *Id.* This line of decisions is predicated on several legal principles. First, that an insurer's duty to defend is distinct from and generally broader than its duty to indemnify. *See Emhart Indus.*, 515 F. Supp. 2d at 261 (noting estoppel "blurs the much-touted distinction between the duty to defend and duty to indemnify . . .."); *see also Sentinel Ins. Co. v. First Ins. Co.*, 875 P.2d 894, 912 (Haw. 1994) ("[A] blanket application of coverage by waiver or estoppel, based on the failure to provide a defense, subverts any meaningful distinction between the duty to defend and the separate duty to indemnify and, in many cases, services no more than to punish the insurer for the breach of a contractual duty.") Therefore, breaching the duty to defend does not necessarily establish the insurer has breached its duty to indemnify. *See Sentinel Ins.*, 875 P.2d

at 911-12 ("In short, equity requires that the consequences of an insurer's breach of its duty to defend must be considered on a case by case basis").

Second, the right to indemnification is contractual. *Polaroid Corp. v. Travelers Indem. Co.*, 610 N.E.2d 912, 921 (Mass. 1993) ("Our appropriate focus is on whether, in some way, the amounts paid in settlement arose naturally from the breach so as to be recoverable as contract damages.") Its breach is a breach of contract. *Sentinel Ins.*, 875 P.2d at 913; *Polaroid*, 610 N.E.2d at 921. The usual remedy for a breach of contract is expectancy damages. *Polaroid*, 610 N.E.2d at 921. That is, courts remedy the breach by putting the non-breaching party in as good of a position as it would be had the breaching party performed. *Id.* The insured's recovery is limited to the expected benefit of its bargain with the insurer. *See Emhart Indus.*, 515 F. Supp. 2d at 261 (discussing how the estoppel rule is undesirable because it expands an insurer's liability beyond the terms of their contract); *Sentinel Ins.*, 875 P.2d at 912 (describing the estoppel rule as resulting in a "windfall" for the insured). Thus, because indemnification for covered claims is the benefit of the bargain, indemnification is the only remedy available when an insurer breaches its duty to defend. *See Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 925 P.2d 1241, 1244 (Or. Ct. App. 1996) (finding the non-estoppel approach "is the only one consistent with the general rule that an insured is entitled to the benefit of its bargain, and no more"); *Sentinel Ins.*, 875 P.2d at 913 (rejecting the estoppel approach because, in effect, it was a penalty for breach of the duty to defend and punitive remedies are disfavored in contract law).

Third, courts in non-estoppel jurisdictions have found this rule fair and equitable. *See, e.g., Sentinel Ins.*, 875 P.2d at 913-14 (noting principles of equity and fairness required rejecting the estoppel rule); *see also Polaroid*, 610 N.E.2d at 922 (discussing how an insured may make litigation choices that later disadvantage an insurer who has breached its duty to defend). In response to the criticism that the lack of estoppel encourages insurers to breach their duties to defend, at least one jurisdiction has rejected this as "tenuous." *Sentinel Ins.*, 875 P.2d at 913. Insurers who breach their duty to defend lose control over the litigation; their insureds may incur tremendous fees and litigate their claims quite poorly. *Id.* This is a grave risk to an insurer. *Id.* If an insurer is eventually required to indemnify, it may be liable to pay more than if it had defended the claim. *Id.*

Faced with a choice between these two paths diverging in the field of insurance law, the Court concludes that Puerto Rico would more likely take the more traveled one, the no-estoppel view. Sound principles of law, persuasive authority from other jurisdictions, and prudential policy concerns support this result. Furthermore, although Puerto Rico insurance law is predominantly a creature of the Puerto Rico Insurance Code, when the Insurance Code is silent, as it is here, the Supreme Court of Puerto Rico will draw inspiration from the law of other jurisdictions, including the common law tradition of the United States, and civil law jurisdictions. *Tyser*, 854 F. Supp. at 38.

At the outset, the Court notes that contrary to Ms. García-Navarro's claims, Universal Insurance has not yet been formally determined to have breached its duty

to defend Hogar La Bella Unión. *Pl.'s Mem.* at 5. Although the Court has discussed the duty to defend, both in this decision and previously, and although the Court is predisposed to conclude that Universal has breached its duty to defend for the reasons the Court has already set forth, it has not been asked to rule definitively on the issue nor has Universal ever explained why it has failed to accord a defense to Hogar.[7]

Nevertheless, the Court is persuaded that the same legal standard applies regardless of whether Universal breached its duty to defend. When an insured settles with a plaintiff, the insured does not yet know whether the insurer will ultimately be found to have breached it duty to defend. Rather, it is only aware of the insurer's refusal. Applying the same approach regardless of whether the refusal is wrongful permits the insured to make an informed judgment about the consequences of its decision to settle.

In *Bucci v. Essex Ins. Co.*, 393 F.3d 285 (1st Cir. 2005), the First Circuit addressed essentially the same question before the Court in the context of unsettled Maine insurance law. There, a plaintiff was injured when he was attacked outside a nightclub. *Id.* at 286. He sued the nightclub and settled. *Id.* As part of the settlement, the nightclub assigned to the plaintiff its claims against its insurer. *Id.* The parties entered a stipulated judgment against the defendant nightclub. *Id.* Prior to the settlement, the club had asked its insurer to defend and indemnify it for the settlement. *Id.* Citing a policy exclusion for battery, the insurer declined. *Id.*

---

[7] In this order, the Court requires the parties to consult and present options whereby the Court will issue a formal ruling on whether Universal has owed the duty to defend Hogar and Ms. Betancourt.

The plaintiff sued the insurer asserting two theories, breach of the duty to defend and breach of the duty to indemnify. *Id.* at 286-87. He prevailed on his duty to defend claim but lost on his indemnity claim. *Id.* at 287. Both parties appealed, but the only relevant issue here is the indemnity claim. *Id.* Specifically, the First Circuit considered whether insurers that breach their duty to defend are barred from defending the indemnity claim under Maine law. *Id.*

The plaintiff argued that a breach of the duty to defend prevented the insurer from arguing that his injuries were not covered under the insured's policy. *Id.* at 292. In effect, his position was that a conclusive finding that an insurer breached its duty to defend is also conclusive that the insurer has a duty to indemnify its insured. *Id.* The First Circuit rejected this argument, noting that Maine law on the subject was in accord with law from Massachusetts and had adopted the position that "the argument would impermissibly collapse the separate duties to defend and to indemnify into one another." *Id.* at 293 (citing *Elliot v. Hanover Ins. Co.*, 1998 ME 138, 711 A.2d 1310, 1314 (Me. 1998); *Polaroid Corp. v. Travelers Indem. Co.*, 610 N.E.2d 912, 922 (Mass. 1993)). *Elliot* adopted *Polaroid*'s conclusion, which established that the common law doctrine of estoppel is inapplicable to situations when the insurer refuses to defend a claim and the insured settles. *Elliot*, 1998 ME 138, ¶ 10, 711 A.2d at 1313. The *Elliot* Court had previously reasoned that "no estoppel is involved in any traditional sense because in refusing to defend a claim, an insurer makes no misrepresentation on which the insured relies to its detriment." *Id.* ¶ 10 (citing *Polaroid*, 610 N.E.2d at 922).

Aware that Maine previously rejected the waiver or estoppel approach, the First Circuit in *Bucci* considered whether an insurer is bound to factual determinations made in default judgments against its insured. *Bucci*, 393 F.3d at 294. The plaintiff contended that the insurer was bound, and that a failure to defend and raise certain arguments during an action against the insured waived those arguments. *Id.* Rejecting this argument, the First Circuit relied in part on an authoritative insurance treatise for the principle that "a court will not create coverage in those situations where coverage does not exist." *Id.* at 294 (quoting 14 Lee Russ and Thomas F. Segalla, COUCH ON INSURANCE § 202:12 at 202-45 (3d ed. 1999)).

Next, the First Circuit considered the risk of collusion and fraud that an estoppel rule presents. *Id.* at 295. The First Circuit stated that "[s]uch a rule would encourage collusion (or even fraud) between insureds and injured plaintiffs, as well as inflated settlements, leaving an insurer without a defense of non-coverage." *Id.* Relatedly, in the context of *Bucci* itself, the Court opined that the dearth of evidence that the insured's negligence somehow exacerbated the plaintiff's injuries was a relevant factor that could be considered in the indemnity action. *Id.* at 296 ("We see no reason why a court would not be free to consider the lack of merit of the only allegations in the complaint on which coverage could possibly be based in considering whether an insurer is precluded from a defense on indemnity").

In addition, the First Circuit justified its rejection of the estoppel rule because of the lack of legal congruity between an initial action in tort and a later action for indemnity. *Id.* The Court reasoned that tort actions and coverage actions are

different. *Id.* Whether an insured was negligent as a matter of law requires examination of a discrete set of legal elements. *Id.* Whether the insured's negligence was within the scope of an insurance policy or instead, a relevant exclusion, posed different, albeit related, legal questions. *See id.* ("In the underlying tort action, all that was required to be proven was the negligence causing injury; not that the touching causing injury was intentional . . . [i]t was not necessary . . . to determine whether Bucci's injuries were caused by battery, the issue on which insurance coverage turned."). The First Circuit concluded that Maine law would likely reject the estoppel approach. *Id.*

Here, in the absence of caselaw in Puerto Rico and in light of closely analogous authority from the First Circuit, the Court concludes that Puerto Rico would likely apply the majority approach and reject the estoppel approach. As such, Universal Insurance may raise its relevant defenses to coverage. This includes contesting Hogar La Bella Unión's negligence, subject to the limits of res judicata and collateral estoppel.

The Court applies this standard for several reasons. First, it is in accord with the discernable principles of Puerto Rico law before the Court. When the Insurance Code is silent on an issue, the Supreme Court of Puerto looks to other competent jurisdictions for guidance. *Tyser*, 854 F. Supp. at 38. In this instance, the clear majority rule adopted by many of the Commonwealth's sister jurisdictions is the no-estoppel rule. The Court readily concludes that this is "the most advanced rule[] in North American law and civil law." *Tyser*, 854 F. Supp. at 38. Moreover, this rule is

consistent with a well-settled principle in Puerto Rico insurance law that "under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel . . .." *See Curbelo v. Water Res. Auth.*, 127 P.R. 747 (P.R. 1991) (quoting 16B APPLEMAN, INSURANCE LAW AND PRACTICE § 9090 (2d ed. 1981)). Instead, the scope of coverage is fixed at the level which the insurer contracted to provide. *Id.* Even without a case from considering estoppel in this post-settlement context, the Court takes the Supreme Court of Puerto Rico at its word. It is the terms of the policy alone that define the scope of an insurer's duty to indemnify.

The second reason for rejecting the estoppel approach is the incongruity between the facts necessary to recover on a tort claim and those necessary to recover under an indemnity claim. In this respect, the Court is persuaded by the First Circuit's analysis of the issue in *Bucci*. *See* 393 F.3d at 296 (finding the lack of uniformity between the elements of a negligence claim and indemnity claim weighed against estoppel). Quite simply, there is a difference between a negligence claim, which arises in tort, and a claim for indemnification, which arises by contract. *See id.* ("There is a difference between the issue of whether the insured's negligence caused injury to the plaintiff and the issue of whether an exclusion . . . precludes coverage even if there was negligence."). While a tort claim usually includes a finding of injury and causation, those are tort standards. *Id.* By contrast, whether there is a duty to indemnify requires interpretation of the insurance policy. *Id.* This is a question of contract law. *Id.* It requires an analysis of whether there are relevant exclusions in the policy that prevent coverage even when the insured has been

negligent.  *Id.*  In this respect, estopping an insurer from raising coverage defenses heightens the risk of a legally dubious result.

Finally, the Court finds that the no-estoppel approach mitigates the risk of collusion and fraud.  Again, as the First Circuit noted in *Bucci*, applying an inflexible rule of estoppel "would encourage collusion (or even fraud) between insureds and injured plaintiffs, as well as inflated settlements, leaving an insurer without a defense of noncoverage."  393 F.3d at 295.  The Court is persuaded that the same concerns apply to this case, even though a strict estoppel rule in cases where an insurer refuses to defend its insured may relieve the burden on an insured by permitting an expeditious settlement.  Just as the *Bucci* Court found that the Maine Supreme Judicial Court was unlikely to adopt a rule encouraging fraud, the Court concludes that the Supreme Court of Puerto Rico is unlikely to adopt a similar rule.

Thus, in light of the applicable law in Puerto Rico, the weight of authority from other jurisdictions, the incongruity between negligence and indemnification claims, and the risk of fraud and collusion, the Court concludes that Puerto Rico would not likely apply the estoppel approach.  In its coverage action, Universal Insurance may therefore raise its coverage defenses.

### 2.    Future Disposition

In *Bucci*, the First Circuit observed that after the Plaintiff and the insured had entered into a stipulated judgment, the Plaintiff, as the insured's assignee, filed suit against the insurer, asserting that the insurer owed both a defense and indemnity. *Id.* at 286.  The trial court resolved the duty to defend by motion for summary

judgment and the duty to indemnify by trial. *Id.* This process seems like a viable roadmap for the Court to follow here. In Puerto Rico, as elsewhere, the duty to defend is a matter of analyzing the four corners of the complaint against the policy provisions of the contract. *Caraballo*, 122 D.P.R. at 2-3. Given that the complaint and the insurance policy are already a matter of record, the Court assumes that the parties could brief the duty to defend issue and that the Court would resolve it expeditiously. The parties likely have a right to present the issue of indemnification to a jury and the Court will discuss with counsel how this aspect of the coverage case should proceed.

### 3.    The Waiver of Apportionment of Liability

The Court concludes that the waiver of apportionment of liability contained within the settlement agreement is consistent with Puerto Rico law. The Court first notes, that at a matter of law, Hogar La Bella Unión has no right to apportionment of liability. As explained above, *see supra* Section III(A)(2), Puerto Rico apportions damages among joint tortfeasors by the proportion of their fault, as found by the trier-of-fact. *Río-Mar*, 522 F.3d at 165. Apportionment is only proper when a trier-of-fact attributes a portion of the plaintiff's damages to a joint tortfeasor other than the defendant. *Id.* Tortfeasors may waive their right to apportionment by failing to assert it. *See Gómez*, 819 F.3d at 23 (finding waiver).

Here, Hogar La Bella Unión waived its rights to apportionment of liability before trial, *Settlement Agreement* at 5, it did not raise any apportionment-based arguments at trial to mitigate damages. A waiver of apportionment of liability might,

in circumstances where double recovery is possible, raise public policy concerns about its validity. *See supra* Section III(A)(2). However valid those concerns, this case does not implicate them. Even without a prior waiver of apportionment, no right to apportionment would exist under these circumstances. *See Gómez*, 819 F.3d at 23 (finding the right to apportionment was waived absent a trier-of-fact's attribution or a party's request for jury instructions concerning apportionment). The sole issue at trial was the damages attributable to Hogar La Bella Unión's negligent acts. The jury's findings were limited to the issue of the damages arising from Hogar La Bella Unión's negligence. *Jury Verdict Form.* Knowing these facts, absent collusion, the Court concludes that the waiver of apportionment of liability is valid.

The Court is unpersuaded by Universal's argument that the waiver of liability apportionment "is contrary to Puerto Rico law." *Universal Mem.* at 5. Universal's statements of law on this matter are largely correct, but inapplicable. Universal states that "[w]hen a joint tortfeasor has been released the Court simply deducts the percentage of liability that was apportioned to him." This is correct. *See Gómez,* 819 F.3d at 22 ("Offset may be proper if the plaintiff liberated the settling tortfeasor from all liability and the settling tortfeasor accepted responsibility or if the court makes a determination as to the settling tortfeasor's share of responsibility"). However, that is not what happened in this case. In this case the jury's verdict included no finding that another settling tortfeasor was responsible for the damages. *See id.* ("[I]f the settling tortfeasor is not adjudged any share of responsibility then there may not be an offset").

Finally, Universal cites caselaw that directly refutes its position that the waiver of apportionment is invalid. *Universal Mem.*, Attach. 3, at 18 (ECF No. 390). For this reason, the Court is unpersuaded by its contentions that the internal release of liability is invalid. In a proffered English translation of *Fonseca v. Inter-Am. Hosp. for Adv. Med.*, 2012 TSPR 3, the Supreme Court of Puerto Rico gave effect to a settlement agreement which released a joint tortfeasor from its internal liability to its fellow joint tortfeasors and its external liability to the plaintiffs. *Id.* at 20-22. Clearly then, such an agreement to waive apportionment is valid under Puerto Rico law.

### C.    The Law 247 Claim and Assigned Bad Faith Claims

#### 1.    The Law 247 Claim

The Court agrees with the parties that Ms. García-Navarro has a constitutional right to a jury trial on her Law 247 claim. *See* H.B. 1645, 18th Leg. Assemb., 4th Reg. Sess. (P.R. 2018); *Mot. Submitting Certified English Translation*, Attach. 1, *Law* (ECF No. 229) (Law 247).

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. AMEND VII. According to the Supreme Court and First Circuit, "[t]he phrase 'suits at common law' refers not only to causes of action that existed in 1791, when the Seventh Amendment was adopted, but also to new causes of action created by statute . . .." *Full Spectrum Software, Inc. v. Forte Automation Sys.*, 858 F.3d 666, 675 (1st Cir. 2017). However, the jury trial right only attaches

when the statutes in question "create[ ] legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 192 (1974).

Courts apply a three-pronged test to determine whether this standard is satisfied. *Spectrum*, 858 F.3d at 675. First, a court should consider whether the statutory action is analogous to "actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* (quoting *Braunstein v. McCabe*, 571 F.3d 108, 118 (1st Cir. 2009)). The modern cause of action may be statutory. *Curtis*, 415 U.S. at 193-94. Second, and more importantly, a court must assess whether the remedy sought is legal or equitable. *Spectrum*, 858 F.3d at 675; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). If a party seeks equitable relief, it weighs against a finding that they have a jury trial right under the Seventh Amendment. *See Granfinanciera*, 492 U.S. at 48 (discussing how litigants bringing equitable claims historically had no right to a jury trial). Third, if a court concludes that a party has a Seventh Amendment right, it must determine whether Congress has, by statute, assigned the claim to resolution by a non-Article III tribunal without a jury fact-finder. *Spectrum*, 858 F.3d at 675-76. If so, the court must decide "whether the legislative assignment is permissible." *Id.* at 676.

Here, the Court concludes that Ms. García-Navarro has a Seventh Amendment right to a jury trial on her Puerto Rico Law 247 (Articles 27.164 and 27.165 of Act. No. 77 of June 19, 1957, known as the "Insurance Code of Puerto Rico") claim because each of the three elements is satisfied. As a threshold matter, the amount in

controversy far exceeds twenty dollars.[8]   Regarding the first prong, the Court concludes that the Law 247 cause of action is analogous to pre-merger suits at common law.  In relevant part, Law 247, Art. 27.164 provides:

(1)   Any person can initiate a civil action against an insurer if they suffered damages as a result of:

b.   For the commission of any of these acts by the insurers covered under this Law:

i.   No good faith attempt to resolve complaints when under an analysis of the totality of the circumstances, could and should have been done and when it fails to act fairly and honestly towards its insured and in consideration of his interests.

Law 247, Art. 27.164(1)(b)(i) (codified at 26 L.P.R.A. § 2716d(1)(b)(i)).

The crux of the statute is to "allow a direct action for bad faith administration of a claim."  *See Order on Mot. to Strike Crosscl., Mot. to File Am. Compl. and Mot. in Compliance* at 24 (ECF No. 233).  The Court agrees with Ms. García-Navarro that this cause of action arises in either contract or tort and is sufficiently analogous to common law causes of action in the eighteenth century for her Seventh Amendment rights to meet the first prong of the Seventh Amendment test.  Precedent from this district has explained that, "[u]nder Civil Law, the English language notion of 'bad faith' (or 'mala fe' in Spanish) is encapsulated by the concept of dolo.'"  *Tyser*, 854 F.

---

[8]     It may seem strange that the Seventh Amendment's twenty-dollar threshold has neither been amended, nor subject to a judicial gloss adjusting for inflation.  There has been no need to do so.  At roughly the same time the Seventh Amendment was ratified, Congress passed the Judiciary Act of 1789, which imposed a much higher amount in controversy requirement for diversity jurisdiction.  In so doing, the first Congress essentially mooted the twenty dollars clause, and Congress has subsequently amended the diversity jurisdiction statute rather than attending to the antiquated language in the Seventh Amendment.  *See generally*, *The Twenty Dollars Clause*, 118 HARV. L. REV. 1665, 1667 (2005).

Supp. at 38. "Dolo" requires a showing of "malicious intent to do harm" to another party, which is more than "mere negligence." *Id.*

In the Court's view, the Law 247 claims arise in either tort or contract. *See Curtis*, 415 U.S. at 196 (finding a claim for damages under the Fair Housing Act "sounds basically in tort" because it "defines a new legal duty and authorizes courts to compensate the plaintiff for the injury caused by the defendant's wrongful breach"); *see also Medina v. Triple-S Vida, Inc.*, 832 F. Supp. 2d 117, 119-120 (D.P.R. 2011) (citing *Scott v. Neely¸* 140 U.S. 106, 110 (1891) for the premise that contract actions meet the Seventh Amendment test)). For purposes of the Seventh Amendment, that is all this Court need decide.[9] *Id.*

The Court also finds the second and third prongs of the Seventh Amendment test are met. If an insurer is found to liable under Law 247, it will be liable for damages, costs, and attorney's fees. 26 L.P.R.A. § 2716d(4). Punitive damages are available under certain circumstances. *Id.* § 2716d(5). Ms. García-Navarro is pursuing all these remedies. *Third Am. Compl.* at ¶¶ 189-94. Actual and punitive damages are a "traditional form of relief offered in the courts of law." *Curtis*, 415 U.S. at 195-96; *Joyce v. Town of Dennis*, 770 F. Supp. 2d 424, 427 (1st Cir. 2011) ("A plaintiff has a Seventh Amendment right to have a jury decide whether she should be awarded punitive damages"). Furthermore, there is also no evidence Congress

---

[9]     Federalism dictates that the Court defer to the Puerto Rico Supreme Court on the state law issue of whether bad faith claims against an insurer sound in contract or tort. As Ms. García-Navarro's memorandum notes, different jurisdictions take different approaches. *See Pl.'s Mem.* at 22-24. Nevertheless, each approach yields the same conclusion that there is a Seventh Amendment right to a jury trial on a bad faith claim against an insurer.

assigned this claim to a non-jury factfinder.  Therefore, Ms. García-Navarro has a constitutional right to try her claims for actual and punitive damages before a jury.  However, the Seventh Amendment does not give her the right to bring her Law 247 claims for attorney's fees and costs before a jury.  *See McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1314-15 (2d Cir. 1993) (finding no Seventh Amendment right because attorney's fees are generally an equitable remedy); *see also Emp. State Ins. Co. v. Chafestz¸* 302 F.2d 828, 830 (5th Cir. 1962) ("There was no common law right to attorney's fees").

To summarize, if the Law 247 claim goes to trial, Ms. García-Navarro has a constitutional right to try her claims for compensatory and punitive damages before a jury.  Not so for her claims under Law 247 for costs and fees.  Should Ms. García-Navarro prevail, the Court will be the trier-of-fact on the issue of costs and attorney's fees.[10]

## 2.    The Assigned Crossclaims

The assigned crossclaims raise related, but slightly different, issues.  Earlier in this litigation, Universal's former co-defendant Hogar La Bella Unión brought crossclaims against it for punitive damages for an alleged breach of an insurance contract and an alleged breach of the duty of good faith and fair dealing.  *Crosscl. Against Co-Def. Universal Ins.* at 2-3 (ECF No. 179) (*Crosscl.*).  Universal avers a jury

---

[10]    If applicable, the Court must also award attorneys fees pursuant to Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure.  For more than fifty years, the First Circuit has found this rule substantive under *Erie*.  *See Flovac, Inc. v. Airvac, Inc.¸*2017 U.S. Dist. LEXIS 48081, at *1-2 (D.P.R. March 30, 2017) (citing *Pan Am. World Airways v. Ramos*, 357 F.3d 341, 342 (1st Cir. 1966); *Dopp v. Pritzker*, 38 F.3d 1239, 1252 (1st Cir. 1994); *Citibank Glob. Mkts., Inc. v. Rodríguez Santana*, 573 F.3d 17, 30 (1st Cir. 2009); *Gómez v. Rodríguez-Wilson*, 819 F.3d 18, 23 (1st Cir. 2016)).

trial on these now-assigned crossclaims is improper because Hogar Bella La Unión failed to demand a jury trial under Federal Rule of Civil Procedure 39(b). *Universal Mem.* at 30-31.

The Court disagrees with Universal and concludes that the jury trial demand has been met. The crossclaim's caption states in capital letters "JURY TRIAL REQUESTED." *Crosscl.* at 1. Moreover, Ms. García-Navarro's own pleadings in this action have consistently demanded a jury trial. *See, e.g.*, *Third Am. Compl.* at 1. Therefore, the Court is satisfied that neither Ms. García-Navarro nor her predecessor-in-interest, Hogar Bella La Unión, waived the right to have the crossclaims for compensatory and punitive damages decided by a jury.

As a final consideration, the Court considers whether Ms. García-Navarro's crossclaim action permits her to bring claim for attorney's fees and costs before a jury. She may, in part. Actions to collect attorney's fees under a contract are an exception to the general rule that attorney's fees are an equitable remedy outside the Seventh Amendment's scope. *Simler v. Conner*, 372 U.S. 221, 221-23 (1963) (per curiam) (finding the Seventh Amendment applied to an action by an attorney to recover fees his client owed under a contingent fee contract). In such cases, the attorney's fees are a legal remedy because they are part of the actual damages incurred by an insurer's breach of contract. *Id.* Therefore, to the extent that the crossclaims address whether Universal's insurance policy with Hogar Bella La Unión obligated it to indemnify Hogar and its assignees for attorney's fees and other litigation costs, Ms. García-Navarro has a Seventh Amendment right to try those claims for fees and costs

to the jury. Costs and attorney's fees not within the policy will be determined by the Court according to what the law requires.

### D. Structuring Future Proceedings

For the sake of clarity, the Court summarizes its legal conclusions here. First, the Court rejects Universal's argument that the Settlement Agreement between Hogar La Bella Unión and Ms. García-Navarro is invalid as a matter of law. Universal provided no basis for the Court to conclude as a matter of law that there was illicit consideration or a public policy reason to invalidate the Settlement Agreement.

Second, regarding the duty to defend, the Court concurs with Universal that there has been as yet no judicial determination that Universal has owed a duty to defend Ms. García-Navarro's lawsuit against Hogar La Bella Unión and Ms. Betancourt. However, the Court is determined to resolve this issue expeditiously. The Court will confer with counsel to establish a proper record and briefing to resolve this issue.

Third, regarding indemnification, the Court concludes that the parties have a right to a jury trial and will discuss with counsel what needs to be done to prepare the case for trial.

Fourth, regarding collusion, this issue requires further consideration. The Court will confer with counsel and require supplementary memoranda with references to Puerto Rico law. The Court will require counsel to answer:

66

(1) Whether collusion between an insured and claimant is a recognized defense to enforcement of a settlement agreement under Puerto Rico Law?

(2) If collusion is a valid defense, who bears the burden of proof?

    a. Does the claimant bear the burden of proof to make an initial showing that the settlement is reasonable?

    b. Does the defendant bear the burden of showing that collusion has occurred, and if so, how may the claimant rebut that showing?

Like indemnification, assuming there is a right to proceed on collusion, the Court concludes that the parties have a right to a jury trial on the issue of collusion and the Court will discuss with the parties how to proceed to trial.

Fifth, the Court concludes that Puerto Rico would likely adopt the no-estoppel approach to settlement agreements.

Sixth, regarding the Law 247 claim and the assigned crossclaims, the Court concludes that Ms. García-Navarro has a Seventh Amendment right to a jury trial for her actual and punitive damages claims. The Court will decide issues of costs and attorney's fees. At present, the Court intends to try the Law 247 claim and the assigned bad faith claims together because they share many common questions of fact and law. In fact, the Court is not clear whether it will be necessary to hold more than one trial on all the remaining issues. At this point, the Court is inclined to try

all remaining claims together but will be interested in counsels' views on this question now that the Court has clarified its position on the outstanding legal issues.

Finally, on apportionment, the Court concludes that in Puerto Rico, the trier-of-fact apportions liability among joint tortfeasors. Each joint tortfeasor is fully liable for the plaintiff's undivided injury. However, if a tortfeasor pays more than his apportioned share, he may seek contribution from the other joint tortfeasors. Settlement complicates this matter slightly. A settling tortfeasor is released from its internal and external liability. Therefore, it is owed no contribution and owes no contribution. In an action against a non-settling tortfeasor, a jury may apportion fault between both the settling and non-settling tortfeasors. However, because the settling party no longer has a duty of contribution, apportionment will merely reduce the overall judgment against the non-settling party by the percentage fault of settling parties.

## IV. CONCLUSION

With the foregoing legal standards established, the parties may continue to pursue their claims and defenses. The Court will schedule a video conference with the attorneys for establishing a briefing and discovery schedule on the collusion issue.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of November, 2020