UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JACQUELINE GARCÍA-NAVARRO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HOGAR LA BELLA UNIÓN, INC., ) <br> et al. ) <br> ) <br> Defendants. ) | 3:17-cv-01271-JAW |

**ORDER ON ATTORNEY'S FEES**

Insureds and an insurer dispute the appropriate amount of attorney's fees the Court should award the insureds after the insurer breached its contractual duty to defend the insureds, and the insureds hired their own private counsel to defend a wrongful death action.  The Court determines that the insureds are entitled to be reimbursed for their defense costs caused by the insurer's contractual breach of the duty to defend them from March 15, 2018 through November 5, 2019.  However, as the final figure is disputed, the Court orders the insureds to recalculate and resubmit their fees along with an affidavit supporting their claim.

**I.      BACKGROUND**

On October 18, 2022, this Court ruled that "Universal Insurance Company (Universal) violated its duty to defend Hogar La Bella Unión, Inc. and Maria M. Betancourt and thereby breached its insurance contract with Hogar La Bella Unión, Inc. (Hogar) and Ms. Betancourt."  *Order on Cross-Mots. for Partial Summ. J. and Mot. for Sanctions* at 62 (ECF No. 473) (*Summ. J. Order*).  Universal did so when it

failed or refused to defend Hogar against the wrongful death claim initiated by Jacqueline García-Navarro. *Id.* at 54 ("This Court has repeatedly ruled that Universal breached its duty to defend Hogar under the terms of its general commercial liability insurance policy"). In its October 18, 2022 order, the Court concluded that Universal's duty to defend commenced on March 15, 2018, when Ms. García-Navarro filed her amended complaint. *Id.* at 60. The Court was less certain about when the duty to defend ended, but it concluded that Universal's duty to defend was effectively over on November 5, 2019, when the jury fixed damages against Hogar. *Id.* As the amount of Hogar's counsel fees was not a matter of record, the Court ordered Hogar to file evidence of the applicable fees and costs, and the Court ordered Universal to file any objections. *Id.* at 63.

Hogar submitted its memorandum of attorney's fees and costs on February 13, 2023. *Mot. Submitting Mem. of Att'ys Fees and Costs* (ECF No. 500) (*Hogar's Mot.*). Universal filed its opposition on March 8, 2023, *Universal's Opp'n to Hogar La Bella Union's Mem. of Att'ys Fees and Costs* (ECF No. 512) (*Universal's Opp'n*), and Hogar filed its reply on March 25, 2023, *Reply to Universal's Opp'n to Hogar La Bella Union's Mem. of Att'ys Fees and Costs* (ECF No. 520) (*Hogar's Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Hogar's Position

Hogar submits that the relevant attorney's fees amount to $134,430.00, representing 448.1 hours of work from 2017-2022 multiplied by a rate of $300.00 per hour. *Hogar's Mot.* at 1-40. Hogar did not claim any reimbursable costs. *Id.* at 40.

### B. Universal's Opposition

In its opposition, Universal offers five main objections. First, Universal contends that Hogar miscounted the total hours, which it believes add up to 427.5 rather than 448.1 hours. *Universal's Opp'n* at 1-2, 2 n.1. Second, Universal contends that the $300.00 per hour rate is contradicted by the rate of $250.00 per hour listed on the time sheet. *Id.* Third, Universal objects to the temporal scope of the claimed fees—from 2017 to 2022, arguing that Hogar included fees incurred before the duty to defend began and after it ended. *Id.* at 2. Fourth, Universal disputes Hogar's claim to fees not actually invoiced by counsel or paid by Hogar. *Id.* Finally, Universal claims that Hogar's proffer is insufficient because it is not accompanied by a supporting affidavit. *Id.* at 4.

### C. Hogar's Reply

In its reply, Hogar argues against Universal's contention that it is not proper to award attorney's fees to the extent they were neither invoiced nor paid. *Hogar's Reply* at 2-4. Hogar maintains that it is Universal's responsibility to pay for the attorney's fees Hogar incurred or for the value of the legal defense provided by private counsel. *Id.* Next, Hogar urges the Court to order all fees sustained by Hogar "as a matter of fairness," even the fees incurred before the First Amended Complaint. *Id.* at 4-6. Third, Hogar disputes Universal's assertion that the timesheet in this case stated that the hourly rate would be $250.00, not $300.00, affirming that the reference to $250.00 on the first page of the bill was an oversight. *Id.* at 6-7. Finally,

Hogar maintains that a supporting affidavit is not required to support its memorandum on attorney's fees. *Id.* at 7.

### III. DISCUSSION

#### A. The Temporal Range: March 15, 2018 Through November 5, 2019

Beginning with the temporal range, the Court's October 18, 2022 order held Universal liable for "defense and litigation costs incurred by Hogar from the filing of the First Amended Complaint through whenever Hogar's attorneys as a practical matter were no longer representing Hogar." *Summ. J. Order* at 63. The Court clarified that "Universal's duty to defend was triggered on March 15, 2018, when Ms. García-Navarro filed her First Amended Complaint, and effectively ended around November 5, 2019." *Id.* at 60. The appropriate temporal range is thus from March 15, 2018 through November 5, 2019, and Hogar is not entitled to attorney's fees for legal services performed outside of that range.

#### B. Fees Incurred, Invoiced or Paid

Universal contends that it is not liable for fees unless actually invoiced by counsel or paid by Hogar and thus it is at most liable for checks amounting to $25,000.00 Hogar issued to Attorneys Jose L. Escalera-Canales and Ramon M. Gonzalez-Santiago. *Universal's Opp'n* at 2. The parties do not dispute that "the adequate remedy is the award of costs and attorney's fees incurred in the litigation by the insured," *Municipality of San Juan v. Great Am. Ins. Co.*, 813 F.2d 520, 524 (1st Cir. 1987), but Universal objects that fees not invoiced do not qualify as "incurred" by the insured. *Universal's Opp'n* at 3-4. Universal submits that

4

"[c]ounsel fees can be awarded against an insurer for breach of the duty to defend **only for services rendered to the insured in an amount calculated to reimburse the insured for legal services which the insurer should have provided** on the insured's behalf and can be awarded only from the time when the duty to defend arose." *Id.* at 3 (quoting STEVEN PLITT, DANIEL MALDONADO, JOSHUA D. ROGERS & JORDAN R. PLITT, COUCH ON INSURANCE § 205:81 (3d ed. 2023)) (emphasis in *Universal's Opp'n*). Universal concludes that Hogar "is only entitled to reimbursement of attorneys fees and costs **incurred** . . . [because] the purpose of this remedy is to make the insured whole again because of a breach of a contractual duty." *Id.* (emphasis in *Universal's Opp'n*).

The Court is unpersuaded by Universal's arguments. In *San Juan*, the First Circuit certified the following question to the Supreme Court of Puerto Rico:

> (3) Assuming there has been a breach of the insurer's contractual duty to defend, is reimbursement of attorney's fees spent by the insured an appropriate remedy?

813 F.3d at 522-23 (emphasis supplied). In its opinion, the Supreme Court of Puerto Rico was careful to use the term, "incurred", not "spent." *Id.* at 524 ("In cases where an insurer has failed to comply with its duty to represent an insured, the adequate remedy is the award of costs and attorney's fees incurred in the litigation by the insured"). Thus, the law of Puerto Rico does not require that the insured actually pay private counsel, rather that in retaining private counsel, the insured incurred responsibility for payment. *See CH Props., Inc. v. First Am. Title Ins. Co.*, 214

5

F. Supp. 3d 111, 114 n.1 (D.P.R. 2016) ("[O]nce an insurer's breach is established, the insured is entitled to all attorneys fees and costs incurred in the litigation").[1]

Black's Law Dictionary defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)." *Incur*, BLACK'S LAW DICTIONARY (11th ed. 2019). Even if Attorneys Escalera-Canales and Gonzalez-Santiago did not promptly invoice Hogar for the full value of their time, Hogar's memorandum of attorney's fees and costs captures the hours Hogar's attorneys actually spent providing legal representation to Hogar that Universal should have provided. Hogar can reasonably be said to be liable to the attorneys for those fees, even if no invoice has been submitted.

Moreover, as Universal has observed, fees are to be awarded "for services rendered to the insured in an amount calculated to reimburse the insured for legal services **which the insurer should have provided on the insured's behalf**." *Universal's Opp'n* at 3 (quoting PLITT ET AL., *supra*, § 205.81) (emphasis supplied). Even applying the lower rate of $250.00 per hour, Universal acknowledges that the sum of fees worked by defense counsel during the relevant period amounts to $65,775.00.[2] *Universal's Opp'n* at 5. Universal does not dispute that this is the fair

---

[1] Universal references *Collins & Aikman Products Co. v. Hartford Accident & Indemnity Co.*, 481 S.E.2d 96 (N.C. Ct. App. 1997), a North Carolina Court of Appeals decision. The formulation in North Carolina is that attorney's fees must be awarded for the insurer's breach based on the "value of the legal defense contracted for by the insured . . . with those damages measurable in attorney's fees." *Id.* at 97.

[2] The Court does not follow Universal's math here. Universal submits that, only taking into account the relevant period, "the hours worked by defense counsel get trimmed down to 233.80 . . . [and] when we multiply these hours by the hourly rate of $250.00 stated at the beginning of the Memorandum, the recoverable sum is $65,775.00." *Id.* at 5. But 233.8 multiplied by $250.00 totals $58,450.00, not $65,775.00.

value of the defense it should have provided on Hogar's behalf, yet it maintains it is only liable for—at most—the $25,000.00 actually paid.

This argument is untenable and to accept it would be to hold that an insurer improperly and obstinately refusing to fulfill its duty to defend is entitled to reap the windfall when an insured is unable or unwilling to pay the fair cost of the defense "the insurer should have provided." Universal refused to defend Hogar—despite the Court's clear orders that it owed the duty to defend—and, as a result, Hogar was required to retain Attorneys Escalera-Canales and Gonzalez-Santiago to provide the defense Universal should have provided. In the relevant window, Attorneys Escalera-Canales and Gonzalez-Santiago worked more than 200 hours on the case and represent that their rate is $300.00 per hour—totaling at least $70,000.[3] The record is unclear as to why Hogar has apparently paid these attorneys only $25,000.00—whether Hogar was unwilling or unable to pay, the attorneys agreed to a discounted rate, or the attorneys agreed to only partly bill Hogar up front and attempt to collect the remainder of their fee through this claim against Universal—but Hogar's memorandum of attorney's fees and costs indicates that the fair value of the defense Universal should have provided was more than $70,000.

---

[3]  Universal estimates that defense counsel worked 233.8 hours during this window and, multiplying this figure by the rate of $250.00 per hour, arrives at a total of $65,775.00 (although those figures multiply to $58,450.00). *Universal's Opp'n* at 5. Hogar, which applied a $300.00 per hour rate in its calculations, counters that the $300.00 rate was consistently applied and the $250.00 figure was merely "an oversight and part of the template that was used to create the Memorandum." *Hogar's Reply* at 7. Absent any evidence that the single appearance of the $250.00 rate was anything other than a typographical error, the Court accepts Hogar's contention that the rate was $300.00 per hour. The value of the 233.8 hours Universal estimated thus rises to $70,140.00.

7

Moreover, Universal's obligation to pay Hogar for the amount Hogar incurred in defense of this claim does not arise from the attorney-client relationship between Hogar and its law firm, but from the insurer-insured contract between Universal and Hogar that obligated Universal to provide a defense. One of the reasons an insured obtains and pays for insurance is to benefit from the insurer's contractual obligation to defend the insured under the terms of its policy. The duty to defend does not depend on whether an insured is impecunious and unable to pay the cost of defense, or whatever payment arrangement an insured is able to negotiate with private counsel. Except for Hogar's need to demonstrate that it actually incurred the fees, the Court rejects Universal's attempt to seek to infuse into its contract with Hogar, Hogar's contract with its private lawyers.

Finally, although it is not a matter of record, it would not be unusual for an insured's counsel to agree with the insured not to bill and collect legal fees until the insurer's legal responsibility for those fees is resolved. If true, the law firm would look to its client for payment only if the insurer's duty to defend and obligation to make payment of defense fees were resolved against the client. Universal has not explained why it should be the beneficiary of such an arrangement between its insureds and their private law firm, especially since Universal caused private counsel's involvement in the case by breaching its contract with its insureds.

C.   **The Supporting Affidavit**

Finally, Universal objects that Hogar's memorandum of fees is "insufficient" because it "was not accompanied by a supporting affidavit." *Universal's Opp'n* at 4.

Hogar counters that "nowhere in its motion does Universal point[] to any legal authority requiring a supporting affidavit" and "[n]either Puerto Rico law nor the Federal Rules of Civil [P]rocedure require a supporting affidavit to be submitted," although "if the Honorable Court were inclined to impose such a requirement on the Hogar, the undersigned will comply with it." *Hogar's Reply* at 7.

Universal's position that an affidavit is required appears to be contrary to First Circuit law. *See Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 559–60 (1st Cir. 1986) ("Although the filing of affidavits is the usual and preferred practice, the demand for fees was signed by plaintiff's chief counsel, . . . [who] is an attorney and officer of the court and his signing of the request for fees amounts to a representation that the submissions are true. We think, however, that the better practice is for each attorney filing a statement of services performed to warrant by affidavit that the submission is true and correct").

The Court does not find it necessary to resolve the affidavit issue here because it requires an amended memorandum of fees from Hogar to determine the appropriate amount of fees to award, and if Hogar submits an affidavit (which it has indicated it is willing to do), the affidavit issue becomes moot. Hogar's calculation of $134,430.00 in fees is based on its estimated 448.1 hours of services provided from 2017-2022, but it does not provide a separate estimate for what the Court has determined to be the relevant window—from March 15, 2018, to November 5, 2019. Universal counts 233.8 hours listed during that window on Hogar's memorandum, but the Court counts 276.4 hours. The Court could use its own estimate based on the

9

record before it, but, given the discrepancy between its estimate and Universal's and the lack of a final estimate from Hogar, it instead ORDERS Hogar to amend its memorandum within ten days to lists its attorney's fees incurred from March 15, 2018 through November 5, 2019. Universal will have seven days to respond and the Court will then issue a final attorney's fee award.

## IV.  CONCLUSION

The Court concludes as follows:

1) The Court orders the Hogar attorneys to provide a new accounting of the time they spent defending Hogar from March 15, 2018 through November 5, 2019;

2) The Court accepts the Hogar attorneys' hourly rate of $300.00;

3) The Court rejects Universal's defense that Hogar must demonstrate actual invoices and accepts the Hogar attorneys' representation that Hogar has incurred attorney's fees for the defense that Universal should have provided;

4) Although the Court agrees with the Hogar attorneys that an attorney affidavit may not be absolutely essential to perfect Hogar's claim for attorney's fees, the Court orders Hogar's attorneys to comply with the First Circuit's usual and preferred practice and to include an affidavit with its final submission;

5) The Court orders Hogar's counsel to submit an affidavit and new invoice reflecting their services on behalf of Hogar from March 15, 2018 through November 5, 2019 within ten days of the date of this Order; and

6) If Universal objects to the newly submitted material, it must do so within seven days of the date of the Hogar attorneys' new submission.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2023